SCOTT J. FERRELL, Bar No. 202091
WARD J. LOTT, Bar No. 211307
CALL, JENSEN & FERRELL
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tele: (949) 717-3000; Fax:  (949) 717-3100
sferrell@calljensen.com
wlott@calljensen.com

LEWIS ROSE, Pro Hac Vice Admission Pending
SARAH ROLLER, Pro Hac Vice Admission Pending
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
Tele: (202) 342-8582; Fax: (202) 342-8451
sroller@kelleydrye.com
lrose@kelleydrye.com

AUGUST T. HORVATH, Pro Hac Vice Admission Pending
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178-0002
Tele: (212) 808-7528; Fax: (212) 808-7897
ahorvath@kelleydrye.com

Attorneys for Ocean Spray Cranberries, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL OF CALIFORNIA**

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> OCEAN SPRAY CRANBERRIES, INC., a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.  CV09-00565 DDP (RZx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:         Monday, April 27, 2009 <br> Time:        10:00 a.m. <br> Courtroom: 3 – 2nd Floor <br>                  U.S.D.C. Central District <br>                  312 N. Spring Street <br>                  Los Angeles, CA 90012 <br><br> Complaint Filed:   January 23, 2009 <br> Trial Date:           None Set |

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                                             Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. Introduction ............................................................................................. 1

II. Background ............................................................................................. 1

    A.    POM's Advertising and Litigation Campaigns ............................... 1

    B.    Ocean Spray's Cranberry & Pomegranate Flavored Juice
        Blend ............................................................................................... 4

III. Argument ............................................................................................... 5

    A.    POM's Claims as to the Name and Labeling of the Product
        Are Precluded and Preempted by FFDCA Requirements ............... 5

        1.    Scope of FFDCA Preclusion and Preemption .................... 5

                a.    Juice Content Representations in Juice
                        Beverage Product Labeling ...................................... 6

                b.    The Reach of FFDCA National Uniform Juice
                        Labeling Standards Extends Beyond the Labels
                        to Advertising and Internet Sites ............................. 9

        2.    POM's Lanham Act Claims that Are Inconsistent
            with this Comprehensive FDA Regulation Are
            Precluded ......................................................................... 11

        3.    POM's State Claims Inconsistent with this
            Comprehensive FDA Regulation Are Preempted ............... 14

        4.    Ocean Spray's Compliance with the FDA
            Requirements .................................................................... 16

        5.    The POM Wonderful v. Coca Cola Decision ..................... 18

    B.    Any Non-Preempted Claims Should Be Dismissed Under
        the Primary Jurisdiction Doctrine ............................................... 19

    C.    Excluding Material Precluded and Preempted by FDA
        Regulations, POM Has Not Alleged False and Misleading
        Statements with Adequate Specificity .......................................... 20

        1.    The Heightened Pleading Standard of Rule 9(b)
            Applies to POM's Lanham Act False Advertising
            Claims ............................................................................. 20

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09          - i -          Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

2.     The Heightened Pleading Standard of Rule 9(b) Also
Applies to POM's Cal. Bus. & Prof. Code section
17200 and 17500 Claims...................................................................21

3.     POM Fails to Identify Any Advertisement, Let Alone
Plead Enough Specifics to Satisfy Its Burden ....................................24

IV. Conclusion .................................................................................................25

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09     - ii -     Case No. CV09-00565 DDP (RZx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Accuimage Diagnostics  Corp. v. Terarecon, Inc.,*

    260. F. Supp. 2d 941, 948 (N.D. Cal. 2003) ............................................................ 25

*Alan Neuman Products, Inc. v. Albright*,

    862 F.2d 1388 (9th Cir. 1989) ........................................................................ 21, 24

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* No. 93 C 20149,

    1993 U.S. Dist. LEXIS 17705, *8-9 (N.D. Ill Dec. 13, 1993) .............................. 24

*Barr Laboratoriess, Inc. v. Quantum Pharmics, Inc.*,

    827 F. Supp. 111 (E.D.N.Y. 1993) .............................................................................. 21

*Berry v. Indianapolis Life Insurance Co.*, No. 3:08-CV-0248-B,

    2009 U.S. Dist. LEXIS 12370 (N.D. Tex. Feb. 19, 2009) ................................. 22, 24

*Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*, No. 96-2459-JWL,

    1997 U.S. Dist. LEXIS 2372 (D. Kan. Feb. 26, 1997) ............................................ 11

*Clark v. Time Warner Cable*,

    523 F.3d 1110 (9th Cir. 2008) .................................................................................... 20

*Cole v. Asurion Corp., No. CV 06-6649 PSG (JTLx)*,

    2008 U.S. Dist. LEXIS 106048 (C.D. Cal. Dec. 30, 2008) ................................. 22, 24

*CollegeNet, Inc. v. XAP Corp.*, No. CV-03-1229-HU,

    2004 U.S. Dist. LEXIS 21059 (D. Or. Oct. 12, 2004)...................................... 21, 24

*Goya De Puerto Rico Inc. v. Santiago*,

    59 F. Supp. 2d 274 (D.P.R. 1999) ...................................................................... 14, 16

*Grove Fresh Distributing, Inc. v. Flavor Fresh Foods, Inc.*,

    720 F. Supp. 714 (N.D. Ill. 1989) .............................................................................. 12

*Holk v. Snapple Beverage Corp.*,

    574 F. Supp. 2d 447 (D.N.J. 2008) ...................................................... 15, 16, 19, 20

**CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION**

OCE02-01OCE02-01:472588_1:3-16-09    - iii -    Case No. CV09-00565 DDP (RZx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

2

<u>Page</u>

3    *Kordel v. United States*,

4        335 U.S. 345 (1948) ................................................................. 9

5    *Kraft Foods N. Am., Inc. v. Rockland County*

6        *Dep't. of Weights and Measures*, No. 01 Civ. 6980 (WHP),

7        2003 U.S. Dist. LEXIS 2714 (S.D.N.Y. Feb. 26, 2003)..................................... 14, 16

8    *Max Daetwyler Corp. v. Input Graphics, Inc.*,

9        608 F. Supp. 1549 (E.D. Pa. 1985) ............................................. 21

10   *McKinniss v. General Mills, Inc., No. CV 07-2521 GAF (FMOx)*,

11       2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007)........................................ 17

12   *Meinhold v. Sprint Spectrum, L.P., No Civ. S-07-00456*,

13       2007 U.S. Dist. LEXIS 35806 (E.D. Cal. May 16, 2007).......................................... 23

14   *Mills v. Giant of Md., LLC*,

15       441 F. Supp. 2d 104 (D.D.C. 2006) ............................................. 16

16   *Moore v. Brewster*,

17       96 F.3d 1240 (9th Cir. 1996)........................................................ 23

18   *MPC Containment Sys., Ltd. v. Moreland*, No. 05 C 6973.,

19       2006 U.S. Dist. LEXIS 55780, at *10 (N.D. Ill. Aug. 10, 2006) ................................24

20   *Multimedia Patent Trust v. Microsoft Corp.*,

21       525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) ......................................... 23

22   *Mutual Pharm. Co. v. Ivax Pharm., Inc.*,

23       459 F. Supp. 2d 925 (C.D. Cal. 2006) ......................................... 12

24   *Mylan Laboratoriess, Inc. v. Matkari*,

25       7 F.3d 1130 (4th Cir. 1993)........................................................ 12

26   *National Nutritional Foods Associate v. Mathews*,

27       557 F.2d 325 (2d Cir. 1977) ........................................................ 10, 19

28

**CALL, JENSEN &**
**FERRELL**
**A PROFESSIONAL**
**CORPORATION**

## TABLE OF AUTHORITIES (Cont'd)

**Page**

*Neu v. Terminix International, Inc., No. C 07-6472 CW,*

    2008 U.S. Dist. LEXIS 60505 (N.D. Cal. July 24, 2008) ................................... 22, 24

*Olenicoff v. UBS AG, No. SACV 08-1029 AG (RNBx),*

    2009 U.S. Dist. LEXIS 14056 (C.D. Cal. Feb. 24, 2009) ................................... 22, 24

*Parrish v. NFL Players Association,*

    534 F. Supp. 2d 1081 (N.D. Cal. 2007)..................................................... 23

*Pestube System, Inc. v. HomeTeam Pest Defense, LLC,*

    No. CIV-05-2832-PHX-MHM,

    2006 U.S. Dist. LEXIS 34337 (D. Ariz. May 24, 2006) ................................... 21, 25

*POM Wonderful LLC v. The Coca Cola Co.,*

    No. CV08-06237 SJO (JTLx) (C.D. Cal. Feb. 10, 2009). ...................................... 18

*Sanderson v. Brugman, No  IP00-459-C-H/G,*

    2001 U.S. Dist. LEXIS 8309 (S.D. Ind. May 29, 2001) ............................................ 25

*Sandoz Pharm. v. Richardson-Vicks, Inc.,*

    902 F.2d 222 (3d Cir. 1990)............................................................... 12, 20

*Summit Tech., Inc. v. High-Line Medical Instruments Co., Inc.,*

    922 F. Supp. 299 (C.D. Cal. 1996)......................................................... 11, 12

*U.S. v. General Dynamics Corp.,*

    828 F.2d 1356 (9th Cir. 1987)................................................................. 20

*United States v. 3 Cartons, More or Less, "No. 26 Formula GM,",*

    132 F. Supp. 569 (S.D. Cal. 1952) ............................................................. 2

*United States v. 250 Jars, etc. of Tupelo Blossom U.S. Fancy Pure Honey,*

    218 F. Supp. 208 (E.D. Mich. 1963)........................................................... 9

*Vess v. Ciba-Geigy Corp. USA,*

    317 F.3d 1097 (9th Cir. 2003)............................................................. 20, 21

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09    - v -    Case No. CV09-00565 DDP (RZx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## TABLE OF AUTHORITIES (Cont'd)

**Page**

*Whitaker v. Thompson*,

   353 F.3d 947 (D.C. Cir.) ........................................................................... 2


## STATE CASES

*Allied Grape Growers v. Bronco Wine Co.*,

   203 Cal. App. 3d 432 (Cal. Ct. App. 1988) ............................................... 23


## FEDERAL REGULATIONS AND STATUTES

21 C.F.R. § 101.1 ............................................................................................ 6

21 C.F.R. § 101.2 ............................................................................................ 6

21 C.F.R. § 101.3 ...................................................................................... 6, 13

21 C.F.R. § 101.3(e) ........................................................................................ 8

21 C.F.R. § 101.4 .................................................................................. 6, 8, 13

21 C.F.R. § 101.9 ................................................................................... *passim*

21 C.F.R. § 101.13 ....................................................................................... 6, 8

21 C.F.R. §101.13(n) ....................................................................................... 9

21 C.F.R. § 101.14 ..................................................................................... 6, 10

21 C.F.R. § 101.15 .......................................................................................... 6

21 C.F.R. § 101.18 .......................................................................................... 6

21 C.F.R. § 101.30 .............................................................. 5, 6, 10, 13, 14, 17

21 C.F.R. § 101.30(b)(1) ................................................................................. 8

21 C.F.R. § 101.54 ....................................................................................... 8, 9

21 C.F.R. § 102.5 ............................................................................................ 6

21 C.F.R. § 102.33 ............................................................... 6, 13, 14, 17

21 C.F.R. § 102.33(c) ...................................................................................... 7

21 § C.F.R. 102.33(d) ................................................................................ 5, 17

**CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION**

## TABLE OF AUTHORITIES (Cont'd)

**Page**

21 C.F.R. § 102.33(d)(1) .................................................................................5, 7

21 C.F.R. § 102.33(f) ...........................................................8, 10, 13, 18

543 U.S. 925 (2004) ..........................................................................2

21 U.S.C. § 321(g) ...................................................2, 10, 11, 19

21 U.S.C. § 321(g)(1)(B) ...............................................................10

21 U.S.C. § 343 ...........................................................6, 15, 17, 19

21 U.S.C. § 343(b) ...........................................................7, 9. 15, 19

21 U.S.C. § 343(c) .......................................................................19

21 U.S.C. § 343(d) .......................................................................15

21 U.S.C. § 343(f) ...........................................................9, 17, 18

21 U.S.C. § 343(i) .................................................................. *passim*

21 U.S.C. § 343(i)(1) ...........................................................13, 15, 17

21 U.S.C. § 343(i)(2) ...........................................................10, 13, 17

21 U.S.C. § 343(q) .................................................................. *passim*

21 U.S.C. § 343(r) ...........................................................................6, 19

21 U.S.C. § 343(r)(1) .......................................................................15

21 U.S.C. § 343(r)(1)(B) .................................................................. *passim*

21 U.S.C. § 343(r)(3) .......................................................................11

21 U.S.C. § 343-1 ...........................................................6, 16, 18

21 U.S.C. § 343-1(a) .......................................................................16

21 U.S.C. § 343-1(a)(1) .................................................................16

21 U.S.C. § 343-1(a)(2) ...........................................................14, 15, 16

21 U.S.C. § 343-1(a)(3) .................................................................15

21 U.S.C. § 343-1(a)(4) .................................................................15

21 U.S.C. § 343-1(a)(5) .................................................................15

21 U.S.C. § 371(a) .......................................................................15

**CALL, JENSEN &**
**FERRELL**
**A PROFESSIONAL**
**CORPORATION**

# TABLE OF AUTHORITIES (Cont'd)

**Page**

58 Fed. Reg. 2470 (Jan. 6, 1993) ...................................................................15

Fed. R. Civ. P. 9(b) ...............................................................................20, 22

## STATE STATUTES

Cal. Bus. & Prof. Code §§ 17200 ........................................................... *passim*

Cal. Bus. & Prof. Code §§ 17500 ........................................................... *passim*

## OTHER AUTHORITY

Letter from Gail T. Costello, FDA District Director, New England District
Office, to Robert Hawthorne, President, Ocean Spray Cranberries, Inc.
(Jan.          19,          2001),          *available*          *at*
http://www.fda.gov/foi/warning_letters/archive/m5075n.pdf................................ 10

Nutrition Labeling and Education Act of 1990 ("NLEA"),
Pub. L. No. 101-535 (1990) ............................................................ 5, 6, 15

U.S. Const. art. VI, cl. 2 .................................................................. 14

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09            - viii -            Case No. CV09-00565 DDP (RZx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

This lawsuit is part of an effort by plaintiff POM Wonderful LLC ("POM" or "Plaintiff") to eradicate the word "pomegranate" from the identity of any competing juice blend, with or without any valid legal basis.  As spelled out in POM's complaint, POM believes that it created the demand for drinks containing pomegranate, that it rightfully owns that entire category, and that any other marketer of a pomegranate-containing beverage is free-riding on POM's efforts.  Unfortunately for POM, all that it can allege about defendant Ocean Spray Cranberries, Inc.'s ("Ocean Spray's") Cranberry & Pomegranate Flavored Juice Blended with Three Juices from Concentrate with Added Ingredients ("Cranberry & Pomegranate Flavored Juice Blend") relates to the name and labeling of a product, which Ocean Spray has constructed in compliance with Federal Food, Drug and Cosmetic Act (FFDCA) requirements and enabling regulations, and which have preclusive and preemptive effect.  To the extent that POM alleges any false advertising outside the preclusive and preemptive scope of FFDCA standards, it has fallen far short of its burden to plead the existence and nature of such advertisements under Fed. R. Civ. P. 8 and 9(b).   Accordingly, Ocean Spray respectfully moves this court under Fed. R. Civ. P. 12(b)(6) for the dismissal of POM's complaint against Ocean Spray in its entirety for failure to state a claim on which relief can be granted.

## II.    BACKGROUND

### A.    POM's Advertising and Litigation Campaigns

POM produces, markets, and sells POM Wonderful® brand pomegranate juice and juice blends.  Complaint at ¶ 11.  Since 2002, POM has promoted its juice as having nutritional and health benefits.  Complaint at ¶ 11-12.  These claims generally have been based on the premise that pomegranates, and therefore POM, have high levels of antioxidants, combined with assertions that there is something qualitatively special about the antioxidants in pomegranates.  Complaint at ¶¶ 13-14.

/ / /

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09          - 1 -          Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    For the first several years of its existence, POM aggressively promoted its
2    product not just for its nutritional value, but for use in the prevention of many specific
3    diseases and related conditions of the kind that are reserved for FDA approved drug
4    products or approved health claims for foods.  *See* 21 U.S.C. § 321(g); *United States v.*
5    *3 Cartons, More or Less, "No. 26 Formula GM,"* 132 F. Supp. 569, 573-74 (S.D. Cal.
6    1952); 21 U.S.C. § 343(r)(1)(B); *Whitaker v. Thompson*, 353 F.3d 947, 948-49 (D.C.
7    Cir.) (prostate health claims require approval under FFDCA standards for drugs, rather
8    than foods), *rehearing en banc denied, cert. denied,* 543 U.S. 925 (2004).  POM
9    asserted that eight ounces per day of POM "can help prevent premature aging, heart
10   disease, stroke, Alzheimer's, even cancer" and over 100 other identified diseases.  *POM*
11   *Wonderful, LLC*, NAD Case Report No. 4468 (Apr. 5, 2006), at 7, 24.  POM also
12   claimed that its product had "more antioxidants than any other drink" and "[p]romotes
13   heart health by . . . preventing the build-up of plaque in the arteries [leading] to the
14   progression of atherosclerosis."  *Id.* at 1.  Despite the fact that the FDA did not
15   authorize POM's labeling and advertising claims, POM persisted in promoting its
16   pomegranate juice product as having unique disease preventive properties, and even
17   prolonging life.

18   All of POM's claims were found to be unsubstantiated in two proceedings before
19   the National Advertising Division (NAD) of the Council of Better Business Bureaus,
20   the leading self-regulatory advertising tribunal.  In 2005, the NAD found that the
21   medical research POM relied on was inadequate to substantiate POM's claims that
22   drinking eight ounces per day of POM's juice can reduce arterial plaque by up to 30%
23   or prevent plaque build-up in healthy people.  *POM Wonderful, LLC*, NAD Case Report
24   No. 4303 (Mar. 30, 2005), at 10.  Again in 2006, the NAD found that POM's research
25   did not substantiate its antioxidant claims that POM's juice contains "more naturally
26   occurring antioxidants than any other drink," and "has more antioxidant power than any
27   other drink."  In addition, the NAD found that the medical research POM cited did not
28   substantiate POM's claims that drinking its juice product could help prevent premature

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                - 2 -                Case No. CV09-00565 DDP (RZx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   aging, cancer, heart disease, arterial plaque build-up, stroke, Alzheimer's disease, or
2   any other disease.  *See POM Wonderful, LLC*, NAD Case Report No. 4468 (Apr. 5,
3   2006), at 46-48.  In fact, NAD determined that not a single claim made by POM was
4   substantiated by the scientific research POM said its claims were based on.
5   Notwithstanding these adverse NAD decisions, POM persists today in promoting its
6   products in advertising and on its website based on a wide array of claimed health
7   benefits.

8        In the meantime, consumers have developed a taste for the flavor of pomegranate
9   as an ingredient in juice products.  Responding to this demand, other beverage
10  marketers have introduced pomegranate as an ingredient or flavor in new products.
11  Consumers have responded favorably, especially to blends of pomegranate with other
12  familiar juices, which result in distinctive and more complex flavor profiles.

13       POM's response to the proliferation of beverages containing pomegranate,
14  starting in late 2008, has been to bring lawsuits in an attempt to drive these products off
15  the market by prohibiting them from using the word "pomegranate" in their names and
16  labeling, even though they contain pomegranate juice.  Four such near-identical suits
17  have now been filed, including this one.  *See* Complaint, *POM Wonderful LLC v. The
18  Coca Cola Company* (C.D. Cal.) (No. CV08-06237); Complaint, *POM Wonderful LLC
19  v. Ocean Spray Cranberries, Inc.* (C.D. Cal.) (No. CV09-00565); Complaint, *POM
20  Wonderful LLC v. Tropicana Prods. Inc.* (C.D. Cal.) (No. CV09-00566); Complaint,
21  *POM Wonderful LLC v. Welch Foods, Inc.* (C.D. Cal.) (No. CV09-00567).  POM does
22  not accuse these companies of directly making false or misleading antioxidant claims or
23  health claims for their products.  Rather, it accuses them of trading on the healthful
24  reputation POM created through its own false and misleading antioxidant and health
25  claims, allegedly by overstating the pomegranate content of their juice blend products.
26  According to POM's complaint, the mere prominent mention of "pomegranate" in the
27  names and labeling of these products is enough to trigger these health benefits in
28  consumers' minds.  *See* Complaint at ¶¶ 22-23.

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09          - 3 -          Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**B.**     <u>**Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend**</u>

Ocean Spray was formed in 1930 by three cranberry growers to expand the market for cranberries and to develop new and innovative cranberry products. Ocean Spray began marketing Ocean Spray Cranberry Juice Cocktail, its signature product, that year. In 1963, Ocean Spray created the first juice blend in the North American juice drink industry, Cran-Apple® Cranberry Apple Juice Drink. It is North America's leading marketer of canned and bottled juice drinks, and also markets dried fruit snacks. Ocean Spray is a grower-owned agricultural cooperative consisting of over 650 cranberry growers and over 100 grapefruit growers.

Since 1963, Ocean Spray has launched at least fourteen juice drinks that blend cranberry with another popular fruit, although not all are currently on the market. Ocean Spray's current cranberry based juice drinks include: Cran-Cherry® Cranberry Cherry Juice Drink Blended with Two Juices from Concentrate, Cran-Grape® Grape Cranberry Juice Drink Blended with Another Juice from Concentrate, Cran-Raspberry® Cranberry Raspberry Juice Drink Blended with Three Juices from Concentrate, Cran-Apple® Cranberry Apple Juice Drink Blended with Another Juice from Concentrate, Cran-Strawberry™ Cranberry Strawberry Juice Drink Blended with Two Juices from Concentrate, Cran-Tangerine® Cranberry Tangerine Juice Drink Blended with Another Juice from Concentrate, Cran-Pomegranate™ Cranberry Pomegranate Juice Drink Blended with Another Juice from Concentrate, and White Cran-Peach™ White Cranberry and Peach Juice Drink Blended with Another Juice from Concentrate. Ocean Spray has also blended cranberry juice with mango, blueberry, black currant, prune, orange, lemonade, and apricot.

In 1998, Ocean Spray introduced a line of 100% Juices which combined cranberry with another flavor characterizing juice. Ocean Spray currently sells, in addition to the Cranberry Pomegranate product that is the subject of this suit, Cranberry and Raspberry Flavored Juice Blended With Four Juices from Concentrate with Added Ingredients, Cranberry and Blueberry Flavored Juice Blended with Two Juices from

Concentrate with Added Ingredients, Cranberry and Concord Grape Flavored Juice Blended with Two Juices from Concentrate with Added Ingredients.

Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend was introduced in 2007. Like all products in Ocean Spray's 100% Juice line, it is a premium, high-quality product composed of 100% fruit juices with no added sugar. Cranberry & Pomegranate Flavored Juice Blend is a blend of grape, apple, cranberry, plum, and pomegranate juice (in order by volume). As discussed below, the naming of the product and the visual depictions on its label are done in compliance with FDA regulations that comprehensively govern the naming and labeling of juice products. Under these regulations, the inclusion of the name and visual depiction of a constituent juice that is not the predominant juice, but is included as a characterizing flavor, is permitted for a flavored juice blend product of this kind. *See* 21 §§ C.F.R. 101.30, 102.33(d).

### III.   ARGUMENT

**A.   POM's Claims as to the Name and Labeling of the Product Are Precluded and Preempted by FFDCA Requirements**

1.   Scope of FFDCA Preclusion and Preemption

The FDA comprehensively regulates the name and labeling of packaged food and beverage products. Juice beverage products, in particular, have been singled out for extensive regulation through statutory requirements adopted in 1990 that expanded mandatory labeling requirements for foods purporting to be beverages containing fruit or vegetable juice through representations made in labeling or advertising, in response to concerns relating to deceptive labeling practices that had emerged under the previous standard. Pub. L. No. 101-535 (1990). These provisions are subject to an explicit statutory preemption of any state law that would create inconsistent standards, and accordingly bar adjudication of POM's claims under Cal. Bus. & Prof. Code §§ 17200 and 17500 and also constitute active and affirmative regulation of the conduct of which

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09          - 5 -          Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   POM complains, precluding courts from interpreting or adopting standards different

2   from those set forth in the FFDCA.

3       a.  Juice Content Representations in Juice Beverage Product Labeling

4      The FFDCA at 21 U.S.C. § 343(i), together with 21 U.S.C. § 343-1, establishes

5   national uniform standards governing representations characterizing the juice content of

6   juice beverage products.  In addition to the requirements governing the declaration of

7   product names and ingredients that apply to packaged food products generally (*e.g.*, 21

8   C.F.R. §§ 101.1, 101.2, 101.3, 101.4, 101.9, 101.13, 101.14, 101.15, 101.18, 102.5), the

9   FDA has established an integrated set of specialized requirements for juice beverage

10  products, including requirements governing "common or usual names" for juice

11  beverage products (21 C.F.R. § 102.33), and the declaration of juice ingredients and

12  percentage juice content for any food that, through labeling or advertising claims,

13  "purports to be a beverage containing fruit or vegetable juice."  (21 C.F.R. § 101.30).

14  These specialized requirements were established as national uniform standards under

15  the amendments to the FFDCA made by the Nutrition Labeling and Education Act of

16  1990 ("NLEA"), Pub. L. No. 101-535.

17     The NLEA amendments added new provisions (21 U.S.C. § 343-1) establishing

18  federal preemption for preexisting food labeling requirements (21 U.S.C. § 343) and

19  encompassed within the scope of federal preemption the expanded food labeling

20  requirements enacted under the NLEA.  These included amendments to existing

21  provisions governing the product name and ingredient statement for juice beverage

22  products (21 U.S.C. § 343(i)) and requiring the declaration of percentage juice content,

23  which were implemented in 21 C.F.R. §§ 101.30 and 102.33.  The NLEA amendments

24  also established mandatory nutrition labeling requirements for food, including juice

25  beverage products, and banned claims characterizing the level of a nutrient in food and

26  characterizing the relationship between a disease or health related condition in the

27  absence of premarket clearance of such claims by FDA.  21 U.S.C. §§ 343(q)-(r).

28  These requirements were implemented in 21 C.F.R. §§ 101.9, 101.13, 101.14 and

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09   - 6 -   Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

related regulations.   As a result of the NLEA amendments, the national uniform standards governing representations concerning the juice content of juice beverage products encompass not only the product name but the entire context in which the name is presented in labeling.   These strict FFDCA requirements provide consumers with a uniform set of substantiated core facts that characterize the product, its ingredients and nutritional components in a manner that has a common basis and consistent purpose, so as to equip consumers with the information to make sound comparisons and well-informed choices among food products at the point of purchase.

The national uniform standards established under the FFDCA specify the manner in which juice content representations should be made in the name that is constructed for 100% juice beverages containing a mixture of different juices, such as Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend.  21 C.F.R. § 102.33(c).  These requirements permit the name for such mixed juice products to selectively represent one or more juices in the mixture and do not require all juices in the mixture to be represented.   Under these circumstances, the name must indicate that the represented juice(s) are not the only juice(s) present (e.g., fruit juice "blend").   21 C.F.R. § 102.33(c).   When a juice that is represented in the name of a mixed fruit juice beverage is not the predominant juice in the mixture on a volumetric basis, the juice is properly represented as a flavoring (e.g., "raspberry flavored").   21 C.F.R. § 102.33(d)(1).

Additional national uniform standards governing representations in product names establish requirements to prohibit inferior juice products from being passed off through the use of  terminology and other representations suggesting it is the same as another product.   21 U.S.C. §§ 343(b), (c).   POM's allegations imply that Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend is an imitation pomegranate juice and explicitly allege that it is nutritionally inferior to POM's product.  *See* Complaint at ¶¶ 20-25.   However, additional national uniform standards governing representations in product names establish requirements that prohibit inferior juice

**CALL, JENSEN &**
**FERRELL**
**A PROFESSIONAL**
**CORPORATION**

OCE02-01OCE02-01:472588_1:3-16-09                         - 7 -                         Case No. CV09-00565 DDP (RZx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

products from being passed off in the manner POM alleges.  21 U.S.C. §§ 343(b), (c). FDA implementing regulations governing common or usual names, however, establish specialized labeling requirements to prevent inferior products from being passed off as the same as a substitute food resembled, requiring the name of a nutritionally inferior substitute food to include the term, "imitation."  21 C.F.R. § 101.3(e).  FDA regulations governing juice beverage product common or usual names impose additional restrictions on the juice content representations made in the product name and label vignettes depicting fruit when a juice ingredient has been modified in such a manner as to result in nutritional inferiority.  21 C.F.R. § 102.33(f).  Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend is not nutritionally or otherwise inferior and is labeled in compliance with the national uniform standards that apply to all packaged juice beverage products and that have been established under the FFDCA, as described fully in Part 4 below.

These national uniform standards not only govern the juice content representations in the product name, but establish separate requirements that all juice ingredients in a mixed juice beverage product be declared on the label in descending order of predominance by volume.  21 C.F.R. § 101.4.  In addition, the percentage juice content must be declared on the label (e.g., "Contains 100 percent juice").  21 C.F.R. § 101.30(b)(1).  They also require that these representations characterizing the juice product and its juice ingredients be declared together with the "Nutrition Facts" box which must appear on the product label adjacent to the percentage juice content declaration and declare the levels of specified nutrients under conditions prescribed by FDA regulations.  21 U.S.C. § 343(q); 21 C.F.R. § 101.9.

Representations that are made in labeling or advertising concerning the nutritional content or health benefits of a juice product trigger disclosure requirements in the Nutrition Facts panel.  If an antioxidant nutrient content claim is made in labeling or advertising that promotes the health benefits of a product (21 C.F.R. §§ 101.13, 101.54) – as POM falsely alleges that Ocean Spray does, and as POM itself does – the

CALL, JENSEN & FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                       - 8 -                       Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

antioxidant nutrient must be declared in the Nutrition Facts box that is required to appear in product labeling.  *See* 21 U.S.C. §§ 343(q), (r )(1)(A); 21 C.F.R. §§ 101.9, 101.13(n), 101.54.  Thus, POM's claims implicate 21 U.S.C. §§ 343(q) and (r) in that if POM's allegations about the implied nutrition and health benefits conveyed by Ocean Spray were true, additional nutritional disclosure requirements might be triggered for Cranberry & Pomegranate Flavored Juice Blend under the governing FFDCA standards.  In this case, no disclosure was required by Ocean Spray, because it does not make antioxidant claims beyond permitted vitamin C claims.  The tightly woven regulatory system governing juice beverage product labeling includes specifications for the format, placement, and type size of information that is required to appear on the label; and the nature and scope of label declarations required adjust and account for product representations that are made in labeling and advertising.  21 U.S.C. §§ 343 (b), (c), (f), (i), (q), (r).

> b.   The Reach of FFDCA National Uniform Juice Labeling Standards
> Extends Beyond the Labels to Advertising and Internet Sites

The reach of FDA jurisdiction under the national uniform juice beverage products labeling standards extends beyond the physical product label to encompass labeling, including advertising and Internet web sites.  The breadth of FDA's jurisdiction over "labeling" is well established to encompass advertising and other printed material.  *See Kordel v. United States,* 335 U.S. 345, 351 (1948) ("labeling" embraces advertising or descriptive matter explaining the product); *United States v. 250 Jars, etc. of Tupelo Blossom U.S. Fancy Pure Honey,* 218 F. Supp. 208, 212 (E.D. Mich. 1963), *aff'd,* 344 F.2d 288 (6th Cir. 1963) ("labeling" included newspaper leaflet and booklet claiming that honey was a panacea for various health disorders).  FDA has made clear that it regards "labeling" to include Internet web sites.  Ocean Spray, which received the FDA's first-ever warning letter stating its policy to regulate Internet website content as "labeling," appreciates the reach of FDA's labeling jurisdiction and the need for its Internet web site to comply with FFDCA labeling requirements, as it

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                                    - 9 -                              Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    does.  *See* Letter from Gail T. Costello, FDA District Director, New England District

2    Office, to Robert Hawthorne, President, Ocean Spray Cranberries, Inc. (Jan. 19, 2001),

3    *available at* http://www.fda.gov/foi/warning_letters/archive/m5075n.pdf (asserting

4    FDA's jurisdiction over unauthorized health claims on Ocean Spray's website under 21

5    U.S.C. § 343(r)(1)(B)); Declaration of Sarah Roller, Ex. 1.  Ocean Spray has complied

6    with the instructions in the FDA warning letter.

7           FDA's jurisdiction is especially expansive with respect to FDA determinations

8    concerning the status of a particular product as a "food," which, in turn, determines the

9    nature and scope of the FFDCA requirements with which the product must comply.

10   For example, under 21 C.F.R. § 101.30, in determining whether a food "purports" to be

11   a beverage containing fruit juice for purposes of 21 U.S.C. § 343(i)(2) requirements, the

12   FDA is required to evaluate the vendor's representations characterizing the composition

13   of the product, regardless of where they may be made in labeling, advertising, or other

14   promotions, and whether such representations are express or implied, such as through

15   vignettes or other pictorial representations of any fruit juice.  *See* 21 C.F.R. § 101.30.

16          The FDA also has jurisdiction over representations concerning the nutrition and

17   health-related benefits of a food product, and the determination of whether particular

18   claims are permitted for "foods" or only for "drugs."  For example, the use of an FDA

19   authorized health claim allows the claim to be used on advertising, and Internet

20   websites, as well as on labeling of "food."  21 U.S.C. §§ 321(f), (g), 343(r)(1)(B),

21   (r)(3); 21 C.F.R. 101.14.  In contrast, without compliance with the health claim

22   requirements of 21 U.S.C. § 343(r)(1)(B) and (r)(3), any disease-related claim in

23   advertising, on the Internet, or elsewhere renders the "food" an unlawful "drug."  21

24   U.S.C. § 321(g)(1)(B).  In making the threshold determination of whether a food

25   product is subject to regulation as a "drug," the FDA may consider claims and

26   representations made by the vendor in "any relevant source," including labeling,

27   advertising, and Internet websites.  *See Nat'l Nutritional Foods Assoc. v. Mathews*, 557

28   F.2d 325, 334 (2d Cir. 1977).  In addition, FDA has jurisdiction to regulate juice

beverage products as "drugs" in light of the producer's representations in advertising and other marketing communications.  21 U.S.C. § 321(g), 343(r)(1)(B), (r)(3).  Thus, in the context of health-related benefits represented for foods purporting to contain fruit juice, the FDA's regulatory authority is not limited to product naming and labeling, but extends to product advertising, Internet sites, and other marketing communications.

2.   POM's Lanham Act Claims that Are Inconsistent with this Comprehensive FDA Regulation Are Precluded

False advertising claims under section 43(a) of the Lanham Act have been held to be precluded where they would substitute a different standard from that imposed by the FFDCA or by FDA regulations.  Where a federal standard exists, private litigants may not look to other standards or seek to impose requirements different from those of the FDA or FFDCA.  They may bring claims only where federal standards relating to their allegations do not exist, or else they must rely on the federal standard to establish the standard or duty that defendants allegedly failed to meet.  *See Braintree Lab., Inc. v. Nephro-Tech, Inc.*, No. 96-2459-JWL, 1997 U.S. Dist. LEXIS 2372, *7, *21 (D. Kan. Feb. 26, 1997) (refusing to apply an ordinary-sense definition to the term "dietary supplement" which was expressly defined and regulated by the FDA).

Courts in Lanham Act cases also may not preemptively determine how the FDA will interpret and enforce its own regulations.  In *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 306 (C.D. Cal. 1996), the court dismissed a Lanham Act action in which the plaintiff alleged that the defendant's failure to disclose the non-FDA-approved status of its device was false and misleading.  The court held that because ruling on the claim would require the court to determine whether the product was required to be FDA-approved, the claim would inappropriately "act as a private vehicle for enforcing FFDCA and FDA regulations." *Id.* at 307.  If the plaintiff had instead alleged that the defendant affirmatively misrepresented that its product was FDA-approved, its claim would not have been precluded, because such a representation would be easily verifiable by a court without transgressing on the FDA's enforcement

1  authority.  *Id.*; *see also Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993).

2  Similarly, in *Sandoz Pharm. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231-32 (3d Cir.

3  1990), the court rejected a Lanham Act claim alleging that the defendant falsely labeled

4  ingredients in its cough syrup product as "inactive," finding that whether the

5  ingredients at issue were "active" or "inactive" was properly within the FDA's drug

6  regulatory authority.  *Id.* at 231-32 ("agency decisions are frequently of a discretionary

7  nature or frequently require expertise, [so] the agency should be given the first chance

8  to exercise that discretion or to apply that expertise.") (internal quotation omitted).

9      A party may bring a Lanham Act claim for affirmatively misrepresenting facts

10  governed by FDA regulations, provided that the FDA regulations are clear enough that

11  the court can determine whether they are violated without the need for interpretation

12  *and* provided that the standard that the plaintiff seeks to enforce is identical to the

13  standard implemented in the FDA regulations.  In *Grove Fresh Distrib., Inc. v. Flavor

14  Fresh Foods, Inc.*, 720 F. Supp. 714 (N.D. Ill. 1989), a Lanham Act claim was allowed

15  to proceed against defendants who sold orange juice claiming to be "100% Orange

16  Juice from Concentrate," where the plaintiffs "relie[d] on the FDA regulation merely to

17  establish the standard or duty which defendants allegedly failed to meet" but otherwise

18  stated the elements of a Lanham Act claim, but did not seek to enforce a different

19  standard from the FDA.  *Id.* at 716; *see also Mutual Pharm. Co. v. Ivax Pharm., Inc.*,

20  459 F. Supp. 2d 925, 939 (C.D. Cal. 2006) (holding that determining "whether

21  defendants' [drug] label conforms to [FDA standards is] something which the Court can

22  do without any need to interpret [and then apply] FDA regulations") (internal

23  quotations omitted).  POM, in contrast, does not ask the court to determine whether

24  Ocean Spray's labeling conforms with the governing FFDCA standards in this case, but

25  rather asks the Court to disregard the governing FFDCA standards, improperly seeking

26  to enforce a different standard of POM's own making.

27      First, POM alleges that "Ocean Spray's [Cranberry & Pomegranate Flavored

28  Juice Blend] purports to combine two of nature's most powerful antioxidants" when

CALL, JENSEN & FERRELL A PROFESSIONAL CORPORATION

"[i]n fact, the main ingredients in [Cranberry & Pomegranate Flavored Juice Blend] are neither cranberry nor pomegranate juice, but rather, grape and apple juice." Complaint at ¶ 19. Here, POM apparently takes issue with the fruit juice flavoring ingredients represented in the name of Cranberry & Pomegranate Flavored Juice Blend, which is governed by 21 U.S.C. § 343(i) and 21 C.F.R. §§ 101.3, 102.33. *See also* 21 C.F.R. §§ 101.4, 101.30.

POM next alleges that "[n]otwithstanding that Ocean Spray's product actually contains little or no pomegranate juice, both in advertising and on the bottle itself, Ocean Spray characterizes this product as 'Cranberry & Pomegranate' juice, and includes a prominent depiction of cranberries and pomegranates on the bottle when, in fact, the primary ingredients are actually grape and apple juice." Complaint at ¶20. The allegation references an exhibit purporting to be a photograph of the Cranberry & Pomegranate Flavored Juice Blend product. This allegation again takes issue with the name Cranberry & Pomegranate Flavored Juice Blend, regulated by 21 U.S.C. § 343(i)(1) and 21 C.F.R. §§ 101.3, 102.33 (*see also* 21 C.F.R. §§ 101.4, 101.30), and additionally takes issue with the visual depiction of pomegranates and possibly with other text appearing on the label, all cohesively and comprehensively regulated by 21 U.S.C. § 343(i)(2) and 21 C.F.R. §§ 101.30 (label text), 102.33(f) (visual depictions), and 21 U.S.C. § 343(q) and 21 C.F.R. § 101.9 (nutrition information).

POM then alleges that Ocean Spray maintains a web site that "advertises and markets Ocean Spray's product as 'cranberry and pomegranate' juice," again taking issue only with the name or characterization of ingredients in the product, and further alleges on information and belief that Ocean Spray has "engaged in other forms of marketing or advertising of [Cranberry & Pomegranate Flavored Juice Blend] targeting consumers throughout the United States." Complaint at ¶ 21. Nothing about the content of the latter "marketing and advertising," let alone anything false or misleading about it, is alleged. Besides being fatally deficient in specificity, as discussed below, these allegations refer to nothing outside of the FDA's jurisdiction. Repetition of a

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                         - 13 -                         Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

food product's name and labeling on an Internet site is encompassed by FDA regulations, and certainly could provoke FDA action if they did not comply with 21 U.S.C. § 343(i) and 21 C.F.R. §§ 102.33 and 101.30.   However, Ocean Spray has clearly complied with these laws and regulations, and POM has not alleged otherwise.

Paragraphs 22 through 26 of the Complaint add nothing of substance to these allegations.   They merely assert that "the name of the product, and … the label that prominently features a depiction of cranberries and pomegranates" (Complaint at ¶ 22) purportedly have consequences for consumers and for POM.   In sum, rhetoric aside, POM's complaint alleges no false and misleading advertising other than that:

      a.     Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend is deceptively named;

      b.     Ocean Spray mischaracterizes the primary ingredients of Cranberry & Pomegranate Flavored Juice Blend; and

      c.     visual depictions on the label of Cranberry & Pomegranate Flavored Juice Blend create a false implication as to its primary ingredients.

As described above, the FDA exhaustively regulates each of these areas, and any resolution of POM's allegations that creates requirements differing from those of the FDA must be precluded.

     3.    <u>POM's State Claims Inconsistent with this Comprehensive FDA Regulation Are Preempted</u>

Congress has been vested with the power to preempt state law concerning matters that fall within the authority of Congress.   U.S. Const. art. VI, cl. 2.   Congress' express intent to preempt state law will be found in Congress' explicit statutory language.   *Kraft Foods N. Am., Inc. v. Rockland County Dep't. of Weights and Measures*, No. 01 Civ. 6980 (WHP), 2003 U.S. Dist. LEXIS 2714, at *12 (S.D.N.Y. Feb. 26, 2003) (finding express preemption language in 21 U.S.C. § 343-1(a)(2)); *Goya De Puerto Rico Inc. v. Santiago*, 59 F. Supp. 2d 274, 279 (D.P.R. 1999) (same).

/ / /

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09      - 14 -      Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1    Preemption may also be appropriate when a state law or requirement "regulates
2    conduct in a field that Congress intended the federal government to occupy
3    exclusively" or when "either it is impossible to comply with both a state and federal
4    law, or a state law is an obstacle to the accomplishment of a congressional purpose or
5    objective." *Holk v. Snapple Beverage Corp.*, 574 F. Supp. 2d 447, 452 (D.N.J. 2008)
6    (finding that "Plaintiff's state law claims [were] preempted because they require[d] the
7    Court to regulate conduct in a field, i.e., beverage labeling . . . that Congress intended
8    the federal government to occupy exclusively . . . [, and] permitting states through
9    statutes or common law causes of action to impose additional limitations and
10   requirements on beverage labels . . . would create obstacles to the accomplishment of
11   Congress's objectives in enacting the FFDCA and placing all authority to enforce and
12   implement that statute with FDA").

13   Express preemption of state law in the naming and labeling of food was
14   established in 21 U.S.C. §§ 343-1(a)(2), (a)(3).  Congress has given the FDA power to
15   create regulations pertaining to any food in interstate commerce.  21 U.S.C. § 371(a).
16   Under 21 U.S.C. § 343-1(a)(4), (a)(5), state law may not be created that deviates in any
17   way from the labeling requirement of 21 U.S.C. § 343(q) and (r)(1).  In implementing
18   21 U.S.C. § 343-1(a)(3) following the enactment of the NLEA, the FDA reviewed and
19   evaluated core misbranding provisions of 21 U.S.C. § 343, including 21 U.S.C.
20   §§ 343(b) and 343(i)(1), to ensure that Federal requirements were adequately being
21   implemented before the requirements would have preemptive effect. *See* NLEA section
22   6(b), Pub. L. No. 101-535 (1990).  The review concluded that "[b]ased upon [FDA's]
23   evaluation of the recommendations of the National Academy of Sciences, Institute of
24   Medicine, Food and Nutrition Board …, its consideration of the comments on the
25   proposed lists [delineating which of the six sections are adequately being implemented
26   by FDA regulations and which are not], the agency finds that all but 21 U.S.C. § 343(d)
27   [not applicable here] are adequately being implemented."  58 Fed. Reg. 2470 (Jan. 6,
28   1993).  Thus, the passage of the preemption provision depended upon a detailed review

1   and determination that the FDA affirmatively and comprehensively regulates the
2   statutory and regulatory domains discussed above.

3       POM is attempting to impose requirements for juice labels and labeling that are
4   different from the requirements under the FFDCA.  Preemption under 21 U.S.C. § 343-
5   1 is appropriate when a state requirement "impose[s] a standard that is 'different from'
6   that required under federal law . . .."  *Kraft Foods N. Am., Inc.*, 2003 U.S. Dist. LEXIS
7   2714, at *19 (holding that "Rockland County's net weight inspection practices
8   impermissibly 'differ[ed] from' and [were] 'contrary to' the Federal Food Packaging
9   Statutes [which included FFDCA labeling provisions explicitly preempted by 21 U.S.C.
10  § 343-1(a)(2)] and [were] therefore preempted . . ..");  *Goya De Puerto Rico Inc.*, 59 F.
11  Supp. 2d at 279 (finding that the Puerto Rico Department of Agriculture's regulations
12  were "extract[ing] from importers more information than what [was] elicited under the
13  [NLEA]"); *see also* 21 U.S.C. § 343-1(a); *cf. Mills v. Giant of Md., LLC*, 441 F. Supp.
14  2d 104, 106 (D.D.C. 2006), *aff'd*, 508 F. 3d 11 (D.C. Cir. 2007) (holding that additional
15  information plaintiff sought to require on labels for beverage milk products was
16  preempted under 21 U.S.C. § 343-1(a)(1), which extends federal preemption to food
17  labeling requirements similar to those presented here).

18      POM's claims should also be found to be preempted on the basis that "the
19  FFDCA and FDA regulations so thoroughly occupy the field of the beverage labeling . .
20  . that it would be unreasonable to infer that Congress intended states to supplement this
21  area."  *Holk*, 574 F. Supp. 2d at 455.  Indeed, the requirements POM seeks to impose
22  on Ocean Spray's labeling "would create obstacles to the accomplishment of
23  Congress's objectives in enacting the FFDCA and placing all authority to enforce and
24  implement the statute with the FDA."  *Id.* at 456.

25          4.      Ocean Spray's Compliance with the FDA Requirements

26      Taking all of POM's allegations as if they were true (although Ocean Spray
27  contends they are not), POM has alleged conduct squarely within the scope of the
28  FFDCA and regulations but utterly without regard to them, and therefore seeks to

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09          - 16 -          Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

impose a legal standard different from and inconsistent with that promulgated by the FDA. *See McKinniss v. General Mills, Inc.*, No. CV 07-2521 GAF (FMOx), 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007) (finding that the packaging contained no false statements, pursuant to the FDA's regulations, and therefore granted the motion to dismiss). POM does not allege that Ocean Spray has not complied with any FFDCA standards, but the fact that Ocean Spray has strictly complied with the FDA's requirements underscores the preclusion and preemption of POM's claims.

The FFDCA establishes national uniform standards with respect to the manner in which information that is required under any provision of 21 U.S.C. § 343 is presented in labeling. 21 U.S.C. § 343(f). Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend complies with these national uniform standards. Ocean Spray's product labeling includes (1) the correct name of the juice product in compliance with 21 U.S.C. § 343(i)(1) and 21 C.F.R. § 102.33; (2) an accurate list of the ingredients and percentage juice content disclosure in compliance with 21 U.S.C. § 343(i)(2) and 21 C.F.R. § 101.30; and (3) the required nutrition labeling information in compliance with 21 U.S.C. § 343(q) and 21 C.F.R. § 101.9.

As noted above, the ingredients in Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend, in order of predominance by volume, are grape juice, apple juice, cranberry juice, plum juice, and pomegranate juice. In full compliance with 21 C.F.R. § 102.33(d), which provides that:

> In a . . . blend of single strength juices where one or more, but not all, of the juices are named on the label other than in the ingredient statement, and where the named juice is not the predominant juice, the common or usual name for the product shall: … Indicate that the named juice is present as a flavor or flavoring …

the labeling for Cranberry & Pomegranate Flavored Juice Blend states: "Cranberry & Pomegranate Flavored Juice Blended with Three Juices from Concentrate with Added Ingredients." In addition, the label of Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend includes a visual depiction of cranberries and pomegranates, as

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                                    - 17 -                              Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

permitted by 21 C.F.R. § 102.33(f), which permits a pictorial representation of the fruit source of a juice contained in the product unless that juice's "organoleptic properties have been modified to the extent that the original juice is not longer recognizable at the time processing is complete, or if its nutrient profile has been diminished to a level below the normal nutrient range for the juice." Because Ocean Spray does not modify the organoleptic properties or diminish the nutrient profile of either the cranberry or pomegranate juice used in its product, the label depiction is fully in compliance.

5.  The POM Wonderful v. Coca Cola Decision

A motion to dismiss filed by Coca Cola in one of the near-identical cases that POM has filed as part of its litigation campaign was decided on February 10, 2009. *See POM Wonderful LLC v. The Coca Cola Co.*, No. CV08-06237 SJO (JTLx) (C.D. Cal. Feb. 10, 2009). The *Coca Cola* court held that POM's Lanham Act claims could not proceed in areas affirmatively occupied by FDA regulation, and thus dismissed those claims to the extent they challenged "the Juice's formal name and labeling in areas for which the FDA has promulgated regulations implementing the FFDCA." *Id.* at 7 (following). However, the court allowed POM's claims to proceed "in contexts beyond the Juice's formal name and labeling areas for which there are relevant FDA regulations, [because it] will not be required to interpret FDA regulations." *Id.* Similarly, the *Coca Cola* court found POM's claims under Cal Bus. & Prof. Code §§17200 and 17500 preempted "to the extent they seek to impose any obligations that are 'not identical to' the sections of the FFDCA, including the FDA's implementing regulations, referenced in Section 403A of the FFDCA or 21 U.S.C. § 343-1, the only relevant sections of which appear to be Section 343(f) and 343(i)," but otherwise allowed them to proceed. *Id.* at 11. For two reasons, this Court should rule more broadly to dismiss POM's claims against Ocean Spray in their entirety.

First, the *Coca Cola* court was led to underestimate the scope of FFDCA preclusion and preemption by not having the opportunity to consider several additional FFDCA provisions and regulations beyond 21 U.S.C. §§ 343(f) and 343(i) that are

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                 - 18 -                 Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

implicated by POM's complaint.   As discussed above, POM's complaint directly implicates several additional sections of the FFDCA and their corresponding regulations, including § 343(b) (passing off as another food), § 343(c) (nutritionally inferior imitation foods), § 343(q) (nutrition labeling), § 343(r) (nutrition, antioxidant, and disease-related claims for foods), and § 321(g) (marketing a food as a misbranded drug).   Further, this Court should consider that the FDA defines the term "labeling" not just to comprise the sticker on the product bottle, but to encompass all representations of the same type made in advertising and marketing materials, and has taken regulatory action against companies for misbranding because of their "internet labeling" under 21 U.S.C. § 343(r).   *See Nat'l Nutritional Foods Assoc.*, 557 F.2d at 334.   Preclusion and preemption therefore extend to all of POM's claims that address statements of the kind regulated by the relevant provisions of 21 U.S.C. § 343, in whatever context or medium they occur.

Second, as discussed in Part C below, even if this Court decides that the scope of FFDCA preclusion and preemption is no greater than that held in the *Coca Cola* case, once those clearly preempted claims addressing the product's "formal name and labeling" are parsed out of POM's Complaint against Ocean Spray, nothing is left that satisfies POM's initial pleading burden to identify specific communications allegedly containing the challenged claims.   The *Coca Cola* court did not have the opportunity to consider this ground for dismissal, as it was not raised on the motion in that case.

**B.**   **Any Non-Preempted Claims Should Be Dismissed Under the Primary Jurisdiction Doctrine**

POM's claims raise complex labeling issues that are squarely within the primary jurisdiction of FDA, "which has already expended tremendous resources and time considering this 'field' and its impact on public health and safety."   *Holk*, 574 F. Supp. 2d at 455.   POM's allegations that Ocean Spray represents its product as possessing health benefits because of the use of "pomegranate" in the name implicate issues concerning the status of Ocean Spray's product as a "food," and the nature and scope of

the FFDCA requirements with which Ocean Spray's product must comply. These issues, at the very heart of POM's complaint, "require[] expertise or uniformity in administration," *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (quoting *U.S. v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)), and it is well-established that FDA "'should be given the first chance to exercise that . . . expertise.'" *Holk*, 574 F. Supp. 2d at 455 (quoting *Sandoz Pharm. Corp.*, 902 F.2d at 231).

## C. Excluding Material Precluded and Preempted by FDA Regulations, POM Has Not Alleged False and Misleading Statements with Adequate Specificity

As set forth above, POM may not litigate to enforce a legal standard, duty, or obligation that is different from regulatory standards promulgated by the FDA as to: (1) the name of Ocean Spray's Cranberry & Pomegranate Flavored Juice Blend; (2) text and visual depictions on the label of Cranberry & Pomegranate Flavored Juice Blend characterizing the constituent juices in Cranberry & Pomegranate Flavored Juice Blend or their relative predominance; or (3) depictions or references to either of the above in other marketing materials, including web sites and advertising. For purposes of whether any part of POM's Complaint can survive dismissal, the question then is: Does POM allege any conduct outside these three categories with enough specificity under the relevant pleading standards? Consideration of POM's allegations in light of the relevant pleading standard shows that it does not.

### 1. The Heightened Pleading Standard of Rule 9(b) Applies to POM's Lanham Act False Advertising Claims

Because fraud and similar false statements are easy to allege in baseless lawsuits if no details are required, such claims are subject to a heightened pleading standard in federal courts and in most other jurisdictions. Fed. R. Civ. P. 9(b) requires that "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Thus, a complaint that alleges fraud or misconduct sounding in fraud "must

state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1989).

The Ninth Circuit Court of Appeals has confirmed the applicability of the more stringent pleading standards of Rule 9 to claims not expressly denominated as fraud but which are "grounded in fraud." *See Vess*, 317 F.3d at 1103-1104.  District courts in the Ninth Circuit have applied this heightened pleading standard to Lanham Act false advertising claims. *See, e.g.*, *CollegeNet, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 U.S. Dist. LEXIS 21059, at *16 (D. Or. Oct. 12, 2004) (applying Rule 9(b) to Lanham Act and common law unfair competition claims); *Pestube Sys., Inc. v. HomeTeam Pest Defense, LLC*, No. CIV-05-2832-PHX-MHM, 2006 U.S. Dist. LEXIS 34337, at *17 (D. Ariz. May 24, 2006) (applying Rule 9(b) to plaintiff's Lanham Act claim that was "grounded" or "sounding" in fraud when the complaint  "is based upon unidentified alleged false or misleading material descriptions of facts knowingly misrepresenting the nature, characteristics, or qualities of Defendant's products").

Even where courts have not explicitly held that a Lanham Act false advertising claim is not subject to the strict pleading requirements for fraud claims under Rule 9, they have required plaintiffs to plead details of the alleged misstatements in order to satisfy their pleading burden under Rule 8.   *See Max Daetwyler Corp. v. Input Graphics, Inc*., 608 F. Supp. 1549, 1556 (E.D. Pa. 1985) (in a Lanham Act claim, "it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense"). This level of specificity is required for the complaint in a Lanham Act action to "place defendants on notice of the wrong they are accused of committing."  *Barr Labs., Inc. v. Quantum Pharmics, Inc*., 827 F. Supp. 111, 118 (E.D.N.Y. 1993).

/ / /

/ / /

/ / /

CALL, JENSEN & FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09          - 21 -          Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

2.     <u>The Heightened Pleading Standard of Rule 9(b) Also Applies to POM's Cal. Bus. & Prof. Code section 17200 and 17500 Claims</u>

The same standard is applicable to POM's allegations that by making untrue or misleading statements Ocean Spray has engaged in "unlawful, unfair, deceptive and/or *fraudulent* business acts or practices" in violation of California Business & Professions Code § 17200.  Complaint at ¶ 44 (emphasis added).  These state law claims rely upon the same alleged misrepresentations as the federal claims and are held to the same pleading requirements under the federal rules.  *See Olenicoff v. UBS AG*, No. SACV 08-1029 AG (RNBx), 2009 U.S. Dist. LEXIS 14056, *22-23 (C.D. Cal. Feb. 24, 2009) (dismissing claim where plaintiff "fail[ed] to state with particularity the basis for the Section 17200 claim" and holding that such a claim must meet the pleading requirements of Rule 9(b)); *Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2009 U.S. Dist. LEXIS 12370, *63-64 (N.D. Tex. Feb. 19, 2009) ("because Count Seven is a section 17200 claim based on 'fraudulent business act or practice,' that claim must be alleged with particularity in accordance with Federal Rule of Civil Procedure 9(b)"; a claim that "has not been stated with sufficient particularity … must be dismissed"); *Cole v. Asurion Corp.*, No. CV 06-6649 PSG (JTLx), 2008 U.S. Dist. LEXIS 106048, at *12-13 (C.D. Cal. Dec. 30, 2008) (holding that a plaintiff must "satisfy the requirement to specifically plead her allegations of misleading advertising under section 17200 as required by Rule 9(b)" and finding a claim sufficient only when "[p]laintiff has set forth specific facts and specific statements, made by or attributed to Defendants, which are alleged to reveal Defendants' misrepresentations"); *Neu v. Terminix Int'l, Inc.*, No. C 07-6472 CW, 2008 U.S. Dist. LEXIS 60505, *7-8 (N.D. Cal. July 24, 2008) (dismissing, without leave to amend, false advertising claims under Cal. Bus. & Prof. Code §§ 17200 and 17500 that "sounded in fraud but were not [pled] with particularity as required by Federal Rule of Civil Procedure 9(b)" because they did not "identify specific false statements of fact, when the statements were made, why Plaintiff believes the statements were knowingly false when made and how Plaintiff

CALL, JENSEN & FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                    - 22 -                    Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

will prove that they were knowingly false when made"); *Parrish v. NFL Players Ass'n*, 534 F. Supp. 2d 1081, 1093 (N.D. Cal. 2007) ("Section 17200 claims that are grounded in fraud must satisfy the particularity requirements of Rule 9(b)").

Although a California Court of Appeals has held that some § 17200 claims alleging merely "unfair" practices and not "actual fraud" may not be subject to the enhanced pleading standard, *see Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 452 (Cal. Ct. App. 1988), in this case POM has explicitly pled "fraudulent business acts or practices" under section 17200 and also has conclusorily alleged all of the elements of fraud:  false representations (Complaint ¶¶ 19-24) through "willful, intentional, and deliberate acts" (Complaint at 12 [¶ 8 of Prayer for Relief]), reliance by consumers (Complaint ¶¶ 24-25), and injury to POM and to consumers (Complaint at ¶ 45).  *See Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages").  Thus, while there may be section 17200 and section 17500 advertising cases not grounded in fraud, this is not such a case.  *See Meinhold v. Sprint Spectrum, L.P.*, No Civ. S-07-00456, 2007 U.S. Dist. LEXIS 35806, *17-18 (E.D. Cal. May 16, 2007) (holding that section 17500 claims "necessarily imply fraud by defendant" where plaintiff alleges "unlawful, unfair, and fraudulent business practices by defendants," that "defendant made representations that it knew or should have known were untrue or misleading and that defendants will continue to do so," and arising "out of a uniform course of alleged fraudulent conduct, specifically, the false and misleading statements allegedly made by defendant through its advertising and marketing").  Further, "[i]n addition to possible Rule 9(b) requirements, … all allegations under Sections 17200 must "state with reasonable particularity the facts supporting the statutory elements of the violation." *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) (quoting *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (Cal. Ct. App. 1993)).  POM has not satisfied this burden by pleading these specifics.

3.     POM Fails to Identify Any Advertisement, Let Alone Plead Enough Specifics to Satisfy Its Burden

As discussed above, claims relating to the name of the beverage and the label content are precluded and preempted by FDA law and regulation.  Therefore, POM must plead some other, non-preempted advertisement with specificity for its Complaint to survive.  The sum total of POM's substantive allegations, apart from the name and label of Ocean Spray's product, appear in Paragraph 21 of the Complaint:

> In addition to the claims on the product itself, Ocean Spray also maintains a website at www.oceanspray.com that advertises and markets Ocean Spray's product as "cranberry and pomegranate" juice.  Plaintiff is informed and believes that Ocean Spray has engaged in other forms of marketing and advertising of its Cranberry Pomegranate Product targeting consumers throughout the United States.

Complaint ¶ 21.  The first sentence merely alleges that the beverage is identified by name or by its characteristic flavors on Ocean Spray's web site.  This is encompassed within FDA preemption and thus cannot stand as the basis for a claim.

The other sentence vaguely refers to advertising which may or may not exist, and does not allege any specific express or implied claims made in it.  This does not meet the pleading standard of a complaint under Rule 9(b) which "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods*., 862 F.2d at 1392-93.  Dismissal of this claim is therefore proper.  *See CollegeNet*, 2004 U.S. Dist. LEXIS 21059, at *16 ; *Olenicoff*, 2009 U.S. Dist. LEXIS 14056, *22-23; *Berry*, 2009 U.S. Dist. LEXIS 12370, *63-64; *Cole*, 2008 U.S. Dist. LEXIS 106048, at *12-13; *Neu*, 2008 U.S. Dist. LEXIS 60505, *7-8; *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* No. 93 C 20149, 1993 U.S. Dist. LEXIS 17705, *8-9 (N.D. Ill Dec. 13, 1993) (dismissing Lanham Act false advertising claims where complaint contained only vague allegations of misrepresentations over several years, and because the plaintiff's allegations based on "information and belief" "definitely [did] not satisfy the requirement of Rule 9(b)");

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09                    - 24 -                    Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1  *Sanderson v. Brugman*, No IP00-459-C-H/G, 2001 U.S. Dist. LEXIS 8309, at *22-23

2  (S.D. Ind. May 29, 2001) (dismissing Lanham Act claims because the plaintiff did not

3  identify specific actionable false or deceptive communications); *MPC Containment*

4  *Sys., Ltd. v. Moreland*, No. 05 C 6973., 2006 U.S. Dist. LEXIS 55780, at *10 (N.D. Ill.

5  Aug. 10, 2006) (dismissing Lanham Act complaint for lack of specificity regarding

6  when and how the alleged false advertising took place).

7       By failing to identify any advertisements that contain false or misleading

8  statements of fact regarding Ocean Spray's product, POM has failed to satisfy even the

9  threshold requirement of the Federal Rules of Procedure.  *See Accuimage Diagnostics*

10 *Corp. v. Terarecon, Inc.,* 260. F. Supp. 2d 941, 948 (N.D. Cal. 2003) (dismissing false

11 advertising claim under Rule 8 because the plaintiff failed to "allege any facts regarding

12 the location, timing, or content of [the defendants'] allegedly false statements").

13 Where, as here, the Complaint fails to identify the allegedly false or misleading

14 representations, "it is impossible for Defendant to assert a proper affirmative defense or

15 Rule 12(b)(6) motion challenging the claim as a matter of law." *Pestube Sys.*, 2006

16 U.S. Dist. LEXIS 34337, at *6-7.  POM's claims indeed fail to allege or identify any of

17 the false or misleading representations of fact.  As a result, Ocean Spray cannot assert a

18 proper affirmative defense, and these claims must be dismissed.

19                    **IV.   CONCLUSION**

20       For the foregoing reasons, Ocean Spray respectfully requests that all counts of

21 POM's Complaint in this matter be DISMISSED WITH PREJUDICE.

22 Dated:  March 16, 2009                 CALL, JENSEN & FERRELL

23

24                              By: s/WARD J. LOTT
25                                 WARD J. LOTT
26                                 Attorneys for Defendant
                                   Ocean Spray Cranberries, Inc.
27

28

CALL, JENSEN & FERRELL
A PROFESSIONAL
CORPORATION

OCE02-01OCE02-01:472588_1:3-16-09          - 25 -          Case No. CV09-00565 DDP (RZx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS