O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company, | ) ) ) | Case No. CV 09-00565 DDP (RZx) |
| | ) ) | **ORDER DENYING MOTION TO DISMISS** |
| Plaintiff, | ) ) | |
| v. | ) ) | [Motion filed on April 16, 2009] |
| OCEAN SPRAY CRANBERRIES, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**I.   BACKGROUND**

Plaintiff Pom Wonderful produces and sells pomegranate juice and juice blends.  Defendant Ocean Spray Cranberries also sells various bottled juices, including a pomegranate and cranberry juice blend it began selling in 2007 (the "Beverage").  (Compl. ¶ 18.)

Plaintiff alleges that while Defendant primarily markets the pomegranate and cranberry juices in its Beverage on its product label, the product is almost entirely comprised of apple and grape juice.  (Id. ¶ 19-20.)  Of the five juices that comprise the product, according to its label, cranberry juice ranks third and

pomegranate juice ranks fifth. (Id. ¶ 22.) Therefore, Plaintiff alleges that Defendant made false and misleading representations regarding the primary ingredients of its product. Plaintiff also alleges that Defendant markets its product as being high in antioxidants, as is pomegranate juice, when in fact the Beverage does not contain high levels of antioxidants. (Id. ¶ 23.) According to Plaintiff, Defendant also made similar misrepresentations regarding its Beverage at its website "www.oceanspray.com." (Id. ¶ 21.)

As a result of Defendant's misrepresentations, Plaintiff states that Defendant's costs to produce the Beverage are lower and Defendant can charge less for its product than competitors such as Plaintiff. Meanwhile, consumers are "tricked" into thinking they are getting a product that is similar to Plaintiff's (whose product is primarily pomegranate juice) for a lower price. (Id. ¶ 24.) Plaintiff thus alleges injury to its business and deprivation of goodwill in the juice market, to Defendant's benefit. (Id. ¶ 24-25.) Specifically, Plaintiff alleges the following federal and state claims:

> 1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a);
> 2) false advertising under California Business & Professions Code § 17500; and
> 3) unfair competition under California Business & Professions Code § 17200, et seq.

(Compl. 8-11.)

Defendant now moves to dismiss Plaintiff's complaint.

**II. LEGAL STANDARD**

Under Rule 12(b)(6), a complaint is dismissed when a plaintiff's allegations fail to state a claim upon which relief can

2

be granted. Fed. R. Civ. P. 12(b)(6). When considering a 12(b)(6) motion, all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). A court properly dismisses a complaint under Rule 12(b)(6) based upon the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under the cognizable legal theory." Baliesteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). The plaintiff's obligation requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal quotation omitted). However, the complaint must state "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." Id. at 1964 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III. DISCUSSION**

    A.   Evidentiary Issues

Both parties submitted additional evidence to this Court for its consideration. Generally, a district court "may not consider any material beyond the pleadings" on a motion to dismiss (e.g., facts presented in briefs, affidavits, or discovery materials). Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.10 (9th Cir. 1989). Therefore, the Court declines to consider the parties' additional evidence and denies Defendant's request for judicial notice of a Federal and Drug Administration ("FDA") warning letter sent to it regarding its internet marketing.

    B.   Lanham Act - False Advertising Claim

     Under the Lanham Act, any person that uses a "false description or representation" that is "in connection with any goods" is liable to another private individual "who believes he is or is likely to be damaged by the use of any such false description or representation." 15 U.S.C § 1125(a); see generally Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002)(citing Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)). Defendant argues that Plaintiff's claim under the Lanham Act for false advertising is precluded or barred by the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 301 et seq., and the regulations promulgated by the FDA.

     The Lanham Act and the FFDCA have overlapping jurisdiction in areas such as marketing and product labeling, though the purposes of the two statutes are different. Mut. Pharm. Co. v. Ivax Pharms., Inc., 459 F. Supp. 2d 925, 932-34 (C.D. Cal. 2006). The Lanham Act is "primarily intended to protect commercial interests" from unfair competition, while the goal of the FFDCA is to protect the public from unsafe or mislabeled products. See id. at 933-34 (citing Sandoz Pharm. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 230 (3rd Cir. 1990)). Although the Lanham Act may be enforced by private litigants, the FFDCA can only be enforced by the FDA or the Department of Justice. Fiedler v. Clark, 714 F.2d 77, 79 (9th Cir. 1983)(citing 21 U.S.C. § 337). Because of this distinction between the two laws and their remedial mechanisms, a line of cases has arisen finding that Lanham Act claims are barred where private litigants ask the district court to "'determine preemptively how [the FDA] will interpret and enforce its own regulations.'" Summit Tech. v. High-Line Medical Instruments Co., 922 F. Supp. 299, 305-

4

06 (C.D. Cal. 1996)(quoting Sandoz Pharm. Corp., 902 F.2d at 231); Mut. Pharm. Co., 459 F. Supp. 2d at 934 ("[C]ourts have refused to allow a Lanham Act claim to proceed where, in order to determine the falsity or misleading nature of the representation at issue, the court would be required to interpret and then apply [F]FDCA statutory or regulatory provisions.")(citing Sandoz Pharm. Corp., 902 F.2d at 231). On the other hand, "the simple fact that a matter touches upon an area dealt with by the FDA is not a bar to proceeding with a claim under the Lanham Act." Mutual Pharm. Co., 459 F. Supp. 2d at 935. For example, courts allow false advertising claims to proceed where the plaintiff alleges the defendant has affirmatively misrepresented compliance with FDA regulations, or where the court only needs to "verify whether defendants' [specific] label [or conduct] conforms to what the FDA has already determined is required." Id. at 938. Put differently, the key issue in the line of cases dealing with FFDCA or FDA regulation preclusion of Lanham Act claims is whether the false advertising involves a fact that can be "easily verified," without requiring the truth of the fact to be determined by the FDA. Mut. Pharm. Co., 459 F. Supp. 2d at 925 (permitting a Lanham Act false advertising claim where the FDA had determined the labeling requirements for the specific drug at issue); Sandoz Pharm. Corp., 902 F.2d at 230 (barring a Lanham Act false advertising claim, because it was dependent on whether one of the product's ingredients was "active" or "inactive," which the FDA had not yet determined); Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc., 720 F. Supp. 714, 715-16 (N.D. Ill. 1989)(permitting a Lanham Act false advertising claim as to whether an orange juice was "100%

5

orange juice from concentrate," even though the FDA defined this term); <u>Summit Tech.</u>, 922 F. Supp. at 306 (barring a Lanham Act false advertising claim where the FDA was still investigating a competitor's product and had not determined yet whether to approve it); <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1139 (4th Cir. 1993)(barring a Lanham Act claim because no actual "representation" had been made, as plaintiff's claim was based on the argument that merely by placing its drug on the market, the defendant had implied FDA approval).

In a sister case to this one where this Plaintiff has made similar allegations of false advertising, <u>Pom Wonderful LLC v. The Coca Cola Company</u>, the court stated in its order granting in part the defendant's motion to dismiss:

> if Pom's Lanham Act claim were to focus on areas covered by the FFDCA and the FDA-implementing regulations, the Court would be required to interpret and apply FDA regulations as to the labeling of [defendant's beverage], which the FDA has not considered or approved.

<u>Pom Wonderful LLC v. The Coca Cola Company</u>, CV 08-06237 SJO at *6 (C.D. Cal. February 10, 2009).  However, the court also found that it was "largely unpersuaded" by the defendant's arguments for FDA preclusion of Lanham Act claims, because Pom's Lanham Act claim "extend beyond the 'packaging' and 'name' of [defendant's beverage] to its 'advertising' and 'marketing,' including [defendant's] website."  <u>Id.</u> at *7.  The court concluded:

> Because the Court, in contexts <u>beyond [defendant's beverage's] formal name and labeling areas</u> for which there are relevant FDA regulations, will not be required to interpret FDA regulations, Pom's Lanham Act claim can proceed to the extent it seeks to redress [defendant's] marketing and advertising in such areas.

6

Id. (emphasis added). This Court agrees with the above reasoning to the degree that Plaintiff may not seek to enforce the FFDCA through the Lanham Act. However, this Court does not find that the essential claim advanced by Plaintiff - that Defendant's label misrepresents the primary ingredients of the Beverage - relies on a determination by the FDA or an interpretation of its regulations.

The "readily verifiable" allegation or fact of Defendant's marketing representations does not directly or indirectly usurp the FDA's role, because determining the primary ingredients of the Beverage and whether Defendant's representations are misleading is not contingent on a decision of fact by the FDA or the enforcement of its regulations. See Mut. Pharm. Co., 459 F. Supp. 2d at 939. To the contrary, the regulations notably do not define what constitutes a label that is "false or misleading." See 21 U.S.C. § 343(a)("A food shall be deemed to be misbranded . . . [i]f [] its labeling is false or misleading in any particular"). As Defendant concedes, it is possible for a product to be both non-compliant with FDA labeling regulations (and thus fall under its purview) and to give rise to a claim for false advertising. The most obvious example of this, as noted by Plaintiff and the above cases, is when a party misrepresents FDA approval when there is none, when FDA approval is required. However, non-compliance with the FDA and a violation of the Lanham Act may also occur where the defendant technically complies with the FDA, but subverts compliance through deception in its advertising. See Mut. Pharm. Co., 459 F. Supp. 2d at 939 (premitting a Lanham Act claim where the court only needed to "verify whether defendants' label conforms to what the FDA has already determined is required to be listed for [defendant's drug],

7

something which the Court can do without any need to interpret and then apply FDA regulations")(internal brackets and quotation omitted).

As both sides acknowledge, there are a number of other requirements for the labels of multiple-juice beverages. The FFDCA requires that foods must be called by their "common or usual name" on product labels. 21 U.S.C. § 343(i). The FDA's regulations further require that in a "multiple-juice beverage," where the named juice is not the predominant juice, the common or usual name for the product must "[i]ndicate that the named juice is present as a flavor or flavoring." 21 C.F.R. § 102.33(d)(1). Regarding the picture of fruit on the label, the FDA requires that if the juice's "organoleptic properties" are not recognizable or that its "nutrient profile" is diminished below the normal nutrient range, then "the source fruits or vegetables from which the modified juice was derived may not be depicted on the label by vignette or other pictorial representation." § 102.33(f). However, Plaintiff's complaint does not reference or attempt to enforce these requirements. Instead, Plaintiff's complaint makes the following allegations: (1) that Defendant's label falsely named its Beverage "Cranberry & Pomegranate" and includes a prominent, misleading display of cranberries and pomegranates on its label; and (2) that Defendant falsely markets and advertises the Beverage on its website as "cranberry and pomegranate juice." (Compl. ¶¶ 20-22; see also Van Gundy Decl. Exs. A-D.)

Of course, as noted by the court in Pom Wonderful LLC v. The Coca Cola Company, it is theoretically possible to create a scenario where a court decision regarding Defendant's product label

8

may conflict directly with FDA regulations; but on its face Plaintiff's complaint does not contest or attempt to enforce the FFDCA or FDA regulation requirements. Accordingly, Plaintiff has stated a permissible claim under the Lanham Act for false advertising. See Williams v. Gerber Prods. Co., 552 F.3d 934, 940 (9th Cir. 2008)("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."). To the degree that Plaintiff's claims may cause actual conflict with federal regulations, the Court declines to limit the scope of Plaintiff's allegations at this stage, without a better developed factual record and construing Plaintiff's complaint in the light most favorable to it.

Therefore, the Court finds that Plaintiff's Lanham Act claim is not precluded by the FFDCA or FDA.

C. State Law Claims

1. Preemption - Background[1]

Pursuant to the Supremacy Clause, "Congress has the power to preempt state law." Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 (2000) (internal citations omitted). In determining whether a state law is preempted, the "ultimate touchstone" is

---

[1] For the sake of clarity and efficiency, the Court will quote and repeat the background legal analysis and standards regarding preemption as found in Judge Otero's opinion in Pom Wonderful LLC v. The Coca Cola Company, CV 08-06237 SJO at *8-9.

congressional intent. <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485 (1996); see <u>English v. Gen. Elec. Co.</u>, 496 U.S. 72, 78-79 (1990) ("Pre[]emption is fundamentally a question of congressional intent."). "As a result, any understanding of the scope of a pre[]emption statute must rest primarily on a fair understanding of congressional purpose." <u>Medtronic, Inc.</u>, 518 U.S. at 485-86 (internal citations and quotations omitted).

Supreme Court precedent establishes that state law is preempted in three circumstances, two of which are relevant here.[2] <u>English</u>, 496 U.S. at 78. First, Congress may expressly preempt state law through legislation. <u>Id.</u> (internal citations omitted). In the absence of express preemption language, federal law may implicitly preempt state law through "field preemption." See <u>Crosby</u>, 530 U.S. at 372; <u>Freightliner Corp., et al. v. Myrick, et al.</u>, 514 U.S. 208, 287 (1995). State law is preempted through field preemption if federal regulations demonstrate Congress' intent to occupy an area exclusively. This may be inferred if the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or in a field "in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." <u>Id.</u> at 79 (internal citations omitted). The Supreme Court has emphasized

---

[2] A third category of preemption (not advanced by Defendant) is conflict preemption; where state law is preempted "to the extent that it actually conflicts with federal law," making compliance with both federal and state law impossible, or where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>English</u>, 496 U.S. at 79 (internal citations omitted); see <u>Crosby</u>, 530 U.S. at 373 (internal citations omitted).

10

that if Congress has legislated in "a field which the States have traditionally occupied," courts "must start with the assumption that the historic police powers of the States were not to be superseded unless that was the clear and manifest purpose of Congress." Medtronic, 518 U.S. at 484; see English, 496 U.S. at 79 (internal citations omitted).

If Congress includes an express preemption provision in a statute, the inclusion of this provision "implies—i.e., supports a reasonable inference—that Congress did not intend to pre[]empt other matters" beyond the provision's reach. Freightliner Corp., 514 U.S. at 288. An express preemption provision, however, does not "entirely foreclose[] any possibility of implied pre[]emption." Id.; see Geier, et al. v. Am. Honda Motor Co., Inc., 529 U.S. 861, 869 (2000).

2. Express Preemption

Defendant first argues that Plaintiff's state law claims are expressly preempted under the FFDCA's express preemption provision. See 21 U.S.C. § 343-1. Because the FFDCA contains an express preemption provision, the Court must first focus on the "plain wording of the clause" to identify the "domain expressly preempted" by the language of the statute. See Sprietsma v. Marine, 537 U.S. 51, 62-63 (2002); In re Farm Raised Salmon Cases, 42 Cal. 4th 1077, 1085 (Cal. 2008)(internal citations omitted). The FFDCA express preemption provision provides that:

> no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by [various sections of the FFDCA] that [are] not identical to the requirement of such section . . . .

11

21 U.S.C. § 343-1(a)(2)-(3). The phrase "not identical to" means that "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable provision [or regulation]" or "[d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]." 21 C.F.R. § 100.1(c)(4). Therefore, this statutory framework expressly preempts state law that imposes obligations that are "not identical to" those FFDCA sections enumerated in Section 343-1, which for the most part are found in § 343. See 21 U.S.C. § 343-1(a). Plaintiff may not bring a claim based on a violation of an identical state law; and it is preempted from extending its claims in a manner that would impose requirements that are different from federal standards under the FFDCA and FDA. See Farm Raised Salmon Cases, 42 Cal. 4th at 1094 ("Congress intended to allow states to establish their own requirements so long as they are identical to those contained in section 343[], which California has done in the form of the Sherman Law.").

Defendant argues that Plaintiff's state law claims are preempted by § 343, which establishes standards for "misbranded food" including, for example, when food is offered for sale under another name (§ 343(b)), when food is an imitation of another food (§ 343(c)), and the required prominence of a food's information label (§ 343(f)). Plaintiff's state claims are for false advertising under California Business & Professions Code § 17500 and unfair competition under California Business & Professions Code § 17200, et seq. Neither of these statutes is identical to the

12

1  FFDCA or its regulations, although § 17200 may be used to enforce
2  violations of California law that are identical to the FFDCA.  For
3  example, California's "Sherman Act" contains identical provisions
4  to the FFDCA.  <u>Farm Raised Salmon Cases</u>, 42 Cal. 4th 1077, 1086-87
5  (Cal. 2008)("[T]he Sherman Law incorporates '[a]ll food labeling
6  regulations and any amendments to those regulations adopted
7  pursuant to the [FFDCA]' as 'the food labeling regulations of this
8  state')(quoting Cal. Health & Safety Code § 110100(a)).
9       However, the Court finds that any limitation is not expressly
10 preempted in regards to claims based on false advertising or claims
11 of unfair competition which are unrelated to the FDA regulations.
12 Again, there is no preemption language under § 343-1 which
13 addresses a false or misleading label or, for that matter, the
14 breadth of issues indicated by an unfair competition law.  As long
15 as Plaintiff's state claims do not impose different requirements
16 than the FFDCA or FDA regulations, these claims are not preempted.
17      Construing Plaintiff's complaint in the light most favorable
18 to it, the Court finds that its state law claims are not expressly
19 preempted.
20           3.   <u>Field Preemption</u>
21      "The touchstone of [field] preemption is congressional
22 intent."  <u>Martin v. Midwest Express Holdings, Inc.</u>, 555 F.3d 806,
23 808 (9th Cir. 2009).  Where there is no explicit preemptive
24 language, field preemption occurs "where the scheme of federal
25 regulation is so pervasive as to make reasonable the inference that
26 Congress left no room for the States to supplement it." <u>Burkart v.</u>
27 <u>Coleman (In re Tippett)</u>, 542 F.3d 684, 689 (9th Cir. 2008).
28 Defendant thus argues that the FFDCA and FDA regulations intended

13

to occupy the field of beverage labeling. The Court again finds that the reasoning of <u>Pom Wonderful LLC v. The Coca Cola Company</u> is persuasive.

As noted in that opinion, consumer protection laws fall within the states' historic police powers to protect the health and welfare of their citizens. <u>Farm Raised Salmon Cases</u>, 42 Cal. 4th at 1088 (citing <u>Fla. Lime & Avocado Growers, Inc., et al. v. Paul, et al.</u>, 373 U.S. 132, 144 (1963)). These laws include protecting state citizens "against fraud and deception in the sale of food products at retail markets within their borders." <u>Fla. Lime & Avocado Growers, Inc.</u>, 373 U.S. at 144; <u>Farm Raised Salmon Cases</u>, 42 Cal. 4th at 1088. Given that California's food marketing laws fall within a field that states have traditionally occupied, a presumption exists that Congress did not intend to preempt California law. <u>See</u> <u>Kroske v. U.S. Bank Corp.</u>, 432 F.3d 976, 981 (9th Cir. 2005). This presumption can only be overcome if that was the "'clear and manifest purpose of Congress.'" <u>Id.</u> (quoting <u>DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund</u>, 520 U.S. 806, 813 n.8 (1997)).

With regard to the application of the FFDCA here, congressional intent is ascertainable though the Nutrition Labeling and Education Act ("NLEA") of 1990, which amended the FFDCA and added its express preemption provision. In that amendment, Congress stated that the "'[NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FFDCA].'" <u>Farm Raised Salmon Cases</u>, 42 Cal. 4th at 1091 (quoting NLEA, Pub L. No. 101-535, § 6(c)(1)(Nov. 8, 1990) 104 Stat. 2364). Congress therefore "made

14

clear that the preemptive scope of [the FFDCA's express preemption provision] was to sweep no further than the plain language of the statute itself." Id.  Although there are indeed a number of food-labeling requirements promulgated by the FDA, as described in detail above, the Court thus finds that Congress did not intend federal law to exclusively occupy the fields of food labeling and advertising.

Therefore, the Court finds that Plaintiff's state law claims are not barred by field preemption.

### D. Primary Jurisdiction Doctrine

The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the judicial branch." Id. The factors to consider include:  "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Id. at 1115.

Defendant argues that there are complex labeling issues raised here that fall "squarely" within the FDA's jurisdiction, and thus that this Court should refer Plaintiff's claims to the agency.

15

However, while the FDA has regulatory authority in the area of food product labeling, this particular case does not require expertise or implicate uniformity in administration. For one, Plaintiff's claims are not based on technical area over which the FDA has more expertise than the courts. See Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1034-35 (2009 WL 250459) (N.D. Cal. 2009). Plaintiff's claims are also based on state law, which would not necessarily be resolved in the event of an FDA ruling. Id. Finally, neither party provides any evidence that the FDA has actually taken any interest in investigating the claims or issues presented here.

As such, the Court finds that it is not appropriate to apply the primary jurisdiction doctrine here.

E.   Pleading Requirements under Fed. R. Civ. P. 9(b)

Defendant argues that Plaintiff has not satisfied the heightened pleading requirements of Rule 9. The Ninth Circuit has not determined that Rule 9(b) applies to Lanham Act claims, although some district courts have applied this standard. See, e.g., Collegenet, Inc. v. Xap Corp., 2004 U.S. Dist. LEXIS 21059, *15-16 (D. Or. Oct. 12, 2004). However, this Court agrees that Plaintiff's false advertising claims are "grounded in fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). All of Plaintiff's allegations deal with the same underlying issue, which is Defendant's intent to mislead consumers by mischaracterizing the primary ingredients of the Beverage. (See Compl. ¶¶ 20-22.) For example, Plaintiff alleges that Defendant "has confused and misled consumers" with its packaging. (Id. ¶ 20.) Plaintiff also calls Defendant's advertising "false and

misleading." (Id. ¶ 23.)  Accordingly, because Plaintiff's federal and state law claims are all based on fraudulent misrepresentations, Plaintiff's allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  To satisfy Rule 9(b), Plaintiff must therefore "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

Plaintiff alleges that in April 2007, Defendant introduced its Beverage for the first time under the title "Cranberry and Pomegranate," which misrepresented the product's ingredients because it contains little or no pomegranate juice. (Compl. ¶ 18, 20.)  Plaintiff alleges this title was used on the label of Defendant's product, the Beverage, with the result of deceiving consumers.  (Compl. ¶ 20.)  Plaintiff also alleges that the Beverage was marketed as "cranberry and pomegranate" juice on its website - www.oceanspray.com.  (Id. ¶ 21.)  These allegations are sufficient to establish the "time, place, and specific content" requirements of Rule 9(b).

The Court finds that Plaintiff has satisfied its burden of pleading under Rule 9(b).

///

///

17

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES the motion to dismiss.

IT IS SO ORDERED.

Dated: July 16, 2009

                                         DEAN D. PREGERSON
                                         United States District Judge