RICK L. SHACKELFORD (SBN 151262)
ADAM SIEGLER (SBN 116233)
GREENBERG TRAURIG, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
Tel: (310) 586-7700; Fax: (310) 586-7800
E-mail: *ShackelfordR@gtlaw.com*
        *SieglerA@gtlaw.com*

AUGUST T. HORVATH, Pro Hac Vice
STEVEN P. CALEY, Pro Hac Vice
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178-0002
Tel: (212) 808-7528; Fax: (212) 808-7897
E-mail: *AHorvath@kelleydrye.com*

Attorneys for Defendant and Counterclaimant,
Ocean Spray Cranberries, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company, | Case No. CV09-00565 DDP (RZx) |
| Plaintiff, | **SUMMARY JUDGMENT MOTION #1** |
| vs. | **[PUBLIC REDACTED VERSION]** |
| OCEAN SPRAY CRANBERRIES, INC., a Delaware corporation; and DOES 1-10, inclusive, | **OCEAN SPRAY'S OPPOSITION TO POM'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT RE: OCEAN SPRAY'S COUNTERCLAIMS** |
| Defendant. | |
| AND RELATED COUNTERCLAIM | Date:        October 3, 2011<br>Time:        10:00 am<br>Ctrm:        3<br>Judge:       Dean D. Pregerson |
| | Complaint Filed:   January 23, 2009<br>Trial Date:        November 15, 2011 |

MSJ #1:  OCEAN SPRAY'S OPPOSITION TO POM'S MSJ RE: COUNTERCLAIMS

# I.    INTRODUCTION

To prevail on this motion, POM faces the burden of proving that there is insufficient evidence to raise a triable issue of fact as to whether POM's false advertising of its pomegranate juice's medical benefits won any consumers' purchasing dollars away from any Ocean Spray product.  POM's burden is insurmountable given the following facts that are undisputed:

(1)  POM pomegranate juice is in direct competition with many Ocean Spray products in the juice beverage category;

(2)  for the entire period relevant to this litigation, POM and Ocean Spray have monitored each other and regarded each other as competitors, with POM characterizing Ocean Spray's entire product line as its "most popular competitor," its "top competitor," and the "closest substitute for POM Wonderful," while Ocean Spray has been expressing concern about the competitive impact of POM's false and unsubstantiated medical advertising since 2005;

(3)  part of the POM advertising campaign challenged by Ocean Spray compares the supposed antioxidant power of POM pomegranate juice with cranberry juice and "cranberry juice cocktail," associated in the minds of consumers with Ocean Spray; and

(4)  part of the POM advertising campaign challenged by Ocean Spray regarding its medical benefits specifically targets an Ocean Spray product, calling it a "liar," "imposter," and "fake" that purportedly does not offer the dramatic medical benefits promised by POM pomegranate juice.

These undisputed facts alone suffice to provide the fact-finder with sufficient evidence to conclude that POM's pomegranate juice competes with Ocean Spray products and that Ocean Spray may have a reasonable basis to believe that POM's false advertising of its pomegranate juice's medical benefits wrests at least some sales from various Ocean Spray products.  In addition, POM's own expert and consumer witnesses purport to establish that there is competition between POM pomegranate juice and Ocean Spray 100% Juice Cranberry & Pomegranate.

1

In its motion, POM tries to walk away from its own documents and arguments regarding the competition between these two products by putting forth a peculiar form of one-way competition, under which Ocean Spray's challenged advertising for its product can draw sales from POM pomegranate juice, yet POM's false advertising of its own products medical benefits does not draw sales from Ocean Spray.  POM's argument is internally contradictory and economically unsound.  Either the two products at issue compete with each other or they do not.  It cannot be that Ocean Spray's product injures POM by winning sales from its pomegranate juice by allegedly holding itself out as a pomegranate juice, yet there is no injury to Ocean Spray when POM wins those sales back by touting its pomegranate juice's supposedly unique medical benefits, and in part by claiming to expose the very same Ocean Spray product to consumers as an imposter that cannot promise those benefits.

## II.    LEGAL STANDARD

### A.    Proving Injury at Trial

To establish the element of injury in a Lanham Act False advertising case, a plaintiff must prove a "likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000).  To meet this burden, the plaintiff must present evidence sufficient to provide a reasonable basis for the belief that it is likely to be damaged as a result of the false advertising.  *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., Inc.*, 284 F.3d 302, 318-19 (1st Cir. 2002).  This element is ordinarily met by showing that the plaintiff has a direct business interest in the sale of goods or services that may have been directly affected by the defendant's advertising.  *See Logan v. Burgers Ozark County Cured Hams Inc.*, 263 F.3d 447, 463 (5th Cir. 2001); *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 278, (2d Cir. 1981) (concluding that the plaintiff had offered a reasonable basis for the belief that it was likely to be damaged as a result of the false advertising because, where parties competed in the same market, it was likely that defendant's apparently effective claims of competitive superiority would result in loss of sales to

2

plaintiff).  The plaintiff need not prove any specific amount of monetary damages to satisfy the injury element.  *See Logan* at 462.

Direct empirical evidence of diverted sales, such as POM contends Ocean Spray requires to meet its burden in this case, is not required in Lanham Act cases to satisfy the injury element except for cases in which the products at issue are not in direct competition, and where there is no comparative element.  *See PDK Labs v. Friedlander*, 103 F.3d 1103, 1111 (2d Cir. 1997) ("a plaintiff must make a more substantial showing of injury and causation where the plaintiff's products are not obviously in competition with defendant's products"); *Ortho Pharmaceutical Corp. v. Cosrophar, Inc.,* 32 F.3d 690, 695 (2d Cir.1994).

Where the challenged advertising makes a false or misleading comparison or reference to the plaintiff's product, the injury element may be presumed.  *See McNeilab, Inc. v. Am Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) ("[a] misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer. … In that context, … irreparable harm will be presumed"); *Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 129 F. Supp. 2d 351, 367 (D.N.J. 2000) ("[w]here the challenged advertising makes a misleading comparison or reference to a competitor's product, irreparable harm is presumed"), *aff'd*, 290 F.3d 578 (3d Cir. 2002); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997) ("[p]ublication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance").  Such a comparative advertisement need not mention the plaintiff's product by name.  If it is likely evident to consumers from the advertisement and the circumstances that a comparison to an unspecified competitor probably refers to the plaintiff, the advertisement will be deemed comparative.  *Time Warner Cable, Inc., v.  Direct TV, Inc.*, 497 F.3d 144 (2d Cir. 2000) (although plaintiff's advertisements did not mention defendant by name, the defendant was its primary competitor in the markets in which the advertisements were aired, such that derogatory references would be reasonably

3

understood by consumer as references to defendant's product); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87 (3d Cir. 2000) (defendant's ads never mentioned plaintiff's products by name, but implicitly told consumers that its product was superior). In such cases, the plaintiff does not need to make any prima facia showing of injury at all; rather, the defendant challenging this element must affirmatively disprove that its advertising has caused the plaintiff any lost sales or other cognizable injury.

POM incorrectly asserts that to recover damages under the Lanham Act, Ocean Spray must show "actual evidence from some injury resulting from the deception." The case POM relies on, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989), has been substantially limited by subsequent Ninth Circuit cases as explained in *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997) ("although the Ninth Circuit in *Harper House* stated that 'actual evidence of some injury resulting from the deception is an essential element' in a suit for damages under § 43(a), a more recent decision holds that 'an inability to show actual damages does not alone preclude a recovery under section 1117' … Under [*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993)], the preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances").

POM's reliance on *TrafficSchool.com, Inc. v. Edriver, Inc.*, 2011 WL 3198226 (9th Cir. 2011), is misplaced. In that case, the court found that a provider of Internet-based traffic school courses and website that provided information to consumers about state motor vehicle services were competitors. Thus, a presumption existed that the traffic-school website suffered commercial injury from alleged false advertising. "We have generally presumed commercial injury when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers," the court held. *Id.* at *3. A false advertising plaintiff "can prove his injury using actual market experience and *probable* market behavior" and "by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Id.* at *2

4

(internal quotations omitted; emphasis in original).  The court went on to hold that "[n]othing in the Lanham Act conditions an award of profits on plaintiff's proof of harm, and we've held that profits may be awarded in the absence of such proof."  *Id.* at *7.  The court denied recovery not because the element of harm or injury was not met, but because it found that the defendant's website was misleading but the court had no way to determine with any certainty what award would be compensatory.  *See id.* at *8.

POM also wrongly applies *Appliance Recycling Centers of Am. Inc. v. JACO*, 378 Fed. Appx. 652 (9th Cir. 2010), for this 'actual injury' proposition; in that case, the court held that "a competitor need not prove injury when suing to enjoin conduct that violates the Act", and denied recovery only because it found the offending advertisement was puffery and did not give rise to a claim under the Lanham Act.

## B.    Ocean Spray's Burden on Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c)).  The moving party has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  *See Mattos v. Agarano*, 590 F.3d 1082, 1085 (9th Cir. 2010).  In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982) (a material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve

5

the parties' differing versions of the truth).  Further, summary judgment is not necessarily appropriate simply because facts are undisputed, but is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts.  *See Braxton–Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

To defeat POM's motion for summary judgment, Ocean Spray need not show that Ocean Spray has a reasonable belief that it has been or is likely to be damaged by POM's false advertising, but only that there exists sufficient evidence to create a triable issue of fact as to whether Ocean Spray reasonably so believes.  Any facts tending to indicate possible competition or an interchange of consumer dollars between POM pomegranate juice and any Ocean Spray product, that could reasonably have been caused by POM's false advertising of its juice's medical benefits, will suffice.  As discussed below, undisputed facts and POM's own admissions more than cross this threshold.

### III.   ARGUMENT

**A.   There Is Evidence that POM's Pomegranate Juice Competes with Ocean Spray Products to the Extent Needed to Satisfy the Lanham Act Element of Injury**

POM Wonderful 100% pomegranate juice and many Ocean Spray products compete in the beverage marketplace.  Broadly, all such products are competitors.  Ocean Spray's products, being juices and juice drinks, are closer competitors to POM pomegranate juice than many other beverages, such as sodas, energy drinks and bottled water.  They are, however, not as close as other refrigerated "super premium" juices, ████████████████████████████████████████████.  *See, e.g.*, Horvath Decl. Exh. 1. at POM-OS 9554.  The products in Ocean Spray's portfolio range from 100% juices with single characterizing flavors through blended juice drinks that are less than 100% fruit juice, with corresponding variation in how closely they compete with POM's product.  In any event, the parties' competing products meet the *Ortho* test of being "obviously in competition" with each other.

POM's initial claims in this matter challenge Ocean Spray's advertising for its 100% Juice Cranberry & Pomegranate product.  Although 100% Juice Cranberry & Pomegranate is the only Ocean Spray product the veracity of whose advertising is at issue in this case, Ocean Spray can assert injury to the extent that POM's false advertising diverted sales from any Ocean Spray product, or harmed the goodwill of Ocean Spray in general.

Ocean Spray's counterclaims challenge POM Wonderful's advertising claims that its 100% pomegranate juice is scientifically and medically proven to prevent, cure, and/or treat a variety of diseases and serious medical conditions, as well as related claims that POM's 100% pomegranate has unique antioxidant properties that give it the power to treat disease unlike any other beverage.  Ocean Spray contends that there is a reasonable likelihood that as a result of these claims, some of which were targeted specifically at Ocean Spray products and/or at types of juice marketed by Ocean Spray, some sales of Ocean Spray products were diverted to POM pomegranate juice.  This likelihood constitutes injury to Ocean Spray sufficient to support injunctive relief.

Ocean Spray believes that the amount of its sales that may have been diverted to POM pomegranate juice through POM's false advertising is modest.  Neither side in this case has produced any evidence that the other's false advertising had any measurable economic impact on its sales or profits.  Although they compete "directly" in the beverage market, and are closer substitutes than some other occupants of this market such as bottled water, sodas, energy drinks, etc., POM pomegranate juice is not a very close substitute for any Ocean Spray product, nor is any Ocean Spray product a very close substitute for POM.  Many documents produced by both sides show that POM and Ocean Spray have dramatically different brand identities, core consumers, selling propositions, flavor profiles, regional consumption distributions, and marketing philosophies.  POM's 100% pomegranate juice is a niche product for affluent empty-nesters, located in the refrigerated produce section of the market and sold mainly in single-serving (or single-"dose") containers for its avid consumers' daily medical needs.  Ocean Spray's products,

7

though differentiated from each other to some extent, generally are shelf-stable juices, juice blends, and juice drinks marketed to families who are value-conscious but still focused on taste and quality.

The competition that occurs between POM's and Ocean Spray's products, though real and "direct" in the meaning of the case law, is thus minor. Although Ocean Spray has long been aware of POM as a competitor and irritated that POM's false advertising practices have nibbled at Ocean Spray's sales and brought unwelcome public and government scrutiny to the juice industry, to the detriment of the goodwill of all juice companies, the extent of damages would not have warranted lodging Ocean Spray's counterclaims if POM had not initiated this lawsuit. POM, for its part,

Horvath Decl. Exh. 2. (S. Resnick depo) at 174:12-21, 221:15-222:11. Thus, this is a case in which both parties meet the requirements for Lanham Act standing and injury, but there are so few dollars in real damages at stake that neither side can quantify them.

**B.** **POM's Pomegranate Juice Marketing Is Intended to Take Sales from Ocean Spray Products**

Even before Ocean Spray considered developing its 100% Juice Cranberry & Pomegranate, Ocean Spray and POM were on each other's radar screens as competitors that exchanged at least a modest amount of sales. POM regarded Ocean Spray

. Ocean Spray, for its part, noted POM

. In addition, Ocean Spray's documents repeatedly highlight

8

1  ███████████████████████████████████████████████

2  ████████████████████.

3  **1.    POM has Consistently Identified Ocean Spray as a Competitor from**

4  **Whom POM Seeks to Take Sales with its Medical Marketing**

5  POM has ███████████████████████████████████. *See*

6  Horvath Decl. Exhs. 3, 4, 5. ████████████████████

7  █████████████████████████████████████████████

8  ██████████. *See* Horvath Decl. Exhs. 6, 7.  POM consistently

9  █████████████████████████████████████████████

10 █████████████████████████████████  *See* Horvath

11 Decl. Exh. 8 at POM-OS 102528 (████████████████

12 █████████████████████████████████████████

13 █████████████████████████).

14 POM ████████████████████████. Claire Nelson,

15 POM's Director of Beverage Marketing, testified ██████

16 █████████████████████████████████████████████

17 █████████████████████████████████████████████

18 █████████████████████████████████████████████

19 █████████.  *See* Horvath Decl. Exh. 9 at 96:14-101:1.

20 POM's theory of one-way competition hinges on the assumption that the only

21 products that compete with POM pomegranate juice are those that hold themselves out as

22 pomegranate juice.  *See* POM Moving Brief at 23-24.  This theory is belied by POM's

23 own documents, ████████████████████████████████

24 █████████████████████████████████████████████

25 █████████████████████████████████████████████

26 ████████████████████████████████████████

27 ███████████████. POM has known from the outset that its

28 competition is not limited to other pomegranate products, but includes many other fruit

9

1 | juices, and especially those that in recent years have come to be perceived as healthy by
2 | consumers because of high antioxidant capacity.  In 2009,



. *See* Horvath Decl. Exh. 10.

*See id.* at POM-OS 9600.

*See id.* at POM-OS 9590-92.

POM also

*See* Horvath Decl. Exh. 1.

*Id.* at POM-OS 9567.

*Id.* at POM-OS 9535.  POM's Director of Beverage Marketing

*See* Horvath Decl. Exh. 9 at 196:5-14.

25 |        In sum, POM has consistently identified Ocean Spray as a significant competitor
26 | and one from which it seeks to lure consumer purchases through its false advertising of
27 | its pomegranate juice's supposedly proven medical benefits.  Notably, most of these
28 | references are not limited to or principally concerned with the 100% Juice Cranberry &

10

---

MSJ #1:  OCEAN SPRAY'S OPPOSITION TO POM'S MSJ RE: COUNTERCLAIMS

Pomegranate product whose advertising POM challenges in this litigation. Accordingly, they are irrelevant to POM's one-way competition theory that relates only to this product. POM's advertising and marketing clearly targeted many beverages beyond those containing pomegranate, with cranberry being the single largest target. In the face of these documents ███████████████████████████████████████ ██████████████████████████ POM cannot credibly argue that the primary theme of its marketing campaigns for the entire period relevant to this litigation, to the extent it was successful, did not divert at least some sales from Ocean Spray.

## 2. Ocean Spray Noted the Rise of POM as a Competitor and Reasonably Feared at Least Some Lost Sales from POM's False Advertising

Ocean Spray documents show awareness of POM as a competitor prior to launch of 100% Juice Cranberry & Pomegranate. These documents indicate that Ocean Spray was reasonably concerned that POM's deceptive health marketing was taking a small but noticeable number of sales away from products across Ocean Spray's line, including Cranberry Juice Cocktail and the test-marketed Grower's Reserve line of refrigerated juice blends.

███████████████████████████████████████████████████████
█████████████████████████████████████████. *See*
Horvath Decl. Exh. 11 at OSPOM 5392. █████████████████████████
████████████████████████████████ *Id.* at OSPOM 5618
(█████████████████████████████████████████████████
████████████████████████████████████████).

By 2005, Ocean Spray had become concerned that POM's overstated and false medical advertising constituted unfair competition that may have been impacting Ocean Spray sales. In June 2005, Ocean Spray █████████████████████████████
████████████ *See* Horvath Decl. Exh. 12 at OSPOM 16262. Ocean Spray noted ████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

11



*Id.*  In July 2005,

*See*

Horvath Decl. Exh. 13 at OSPOM 4700.  As the Ocean Spray personnel noted,

*See id.*  Ocean Spray

Notably, these communications occurred almost two years before the introduction of Ocean Spray 100% Juice Cranberry & Pomegranate in February of 2007, and POM's theory of one-way competition relating to that product is irrelevant to them.

In 2005 and 2006, Ocean Spray

*See* Horvath Decl. Exh. 14 at OSPOM 12443.

*See* Horvath Decl. Exh. 15 at OSPOM 6145-47.

*See*

Horvath Decl. Exh. 16 at OSPOM 29498.

MSJ #1:  OCEAN SPRAY'S OPPOSITION TO POM'S MSJ RE: COUNTERCLAIMS



Horvath Decl. Exh. 17 at OSPOM 16305.

*Id.*

In June 2006, Ocean Spray noted

Horvath Decl. Exh. 18 at OSPOM 6121.

Horvath Decl. Exh. 19 at OSPOM 4942 (emphasis in original).

*See, e.g.*, Horvath Decl. Exh. 11 at OSPOM 5398, 5400, 5615-40 ( ); Exh. 20 ( ); Exh. 21 ( ); Exh. 22 ( ); Exh. 23 at OSPOM 6146-47 ( ); Exh. 24 (

13

MSJ #1:  OCEAN SPRAY'S OPPOSITION TO POM'S MSJ RE: COUNTERCLAIMS
NY01/HORVA/1490272 -

LA 129,846,484

1   ); Exh. 25 (

2   ).

3   These Ocean Spray documents paint a consistent picture.



12   Unlike POM's counter-argument about one-way competition, these

13   Ocean Spray documents were not ginned up for this litigation.  A jury could conclude

14   from these documents that Ocean Spray reasonably believed, and believes, that POM's

15   false advertising of medical benefits for its pomegranate juice took some sales from

16   Ocean Spray products and thereby injured Ocean Spray.  These documents provide the

17   evidence of "actual market experience and *probable* market behavior" for "creating a

18   chain of inferences showing how defendant's false advertising could harm plaintiff's

19   business" that establishes commercial injury under *TrafficSchool.com*, 2011 WL 3198226

20   at *2.

21   C.   **POM's Marketing Since the Introduction of Ocean Spray's Product at Issue**

22        **Has Directly Compared POM Pomegranate Juice with this Product**

23   Notwithstanding the contentions by POM in its moving brief, POM has regularly

24   issued comparative advertising referencing Ocean Spray products as part and parcel of its

25   advertising campaign falsely touting the medical benefits of pomegranate juice.  These

26   comparisons not only provide evidence from which a jury could find that POM's false

27   advertising injured Ocean Spray, but should activate a presumption that it did so.

28

14

## 1.   The "Pomegranate Truth" Campaign

In late 2007, ███████████████████████████████████
████████████████████. *See* Horvath Decl. Exh. 26. ██████
█████████████████████████████████████████████████████
██████████████████████████. *See id* at POM-OS 5136.  In the new campaign, which Pom gave the Orwellian title "Pomegranate Truth," POM misrepresented that these new beverages were holding themselves out as "pomegranate juice," and then drove home the point that unlike POM pomegranate juice, these new "imposter" juices were not backed by millions of dollars of medical research proving that they could prevent heart disease, slow the progress of prostate cancer, improve erectile function, and provide the other drug-like benefits that were the foundation of POM's marketing.

At the core of POM's comparative campaign was a page on its web site that depicted specific competitive products that POM singled out for such disparagement. One of these is Ocean Spray's 100% Juice Cranberry & Pomegranate, the Ocean Spray product at issue in this case.  That page included, and includes to this day, a photo of a bottle of Ocean Spray's product, misidentified as "Ocean Spray Cranberry & Pomegranate Juice," with text accusing Ocean Spray's product of "deceiving … consumers," and "not telling you the truth" about the product's pomegranate content, claiming as a result that the product cannot deliver the "antioxidant benefits" of POM's pomegranate juice.  *See* Horvath Decl. Exhs. 53, 27.  Other pages of POM's web site link to this page.  POM's web site page "POM Truth" claims,

> **Read the Label**
> Beware of filler juices!  Other companies try to sell you 100% juice with the word Pomegranate next to pretty pictures of pomegranate juice.  These companies want you to believe their products contain all the health benefits of real pomegranate juice.  Don't be fooled.  These products are loaded with highly processed filler juices like white grape, apple and pear, all of which are little better than sugar water when it comes to

15

antioxidant benefits.  Learn more about why POM is the **Real Deal**.

Horvath Decl. Exh. 50 (bold text represents hyperlinks to the explicitly comparative page discussed above); *see also* Horvath Decl. Exhs. 28, 29.  By disparaging Ocean Spray's and other competing products, POM's creative briefs disclose

Horvath Decl. Exh. 30.

Horvath Decl. Exh. 31.

POM's campaign was supported by a whole new web site, www.pomegranatetruth.com, which contained the falsely disparaging depiction of Ocean Spray's product and contrasted it with POM pomegranate juice, which the site characterized as "backed by science," claiming that "to date, numerous clinical studies have documented the benefits of drinking pomegranate juice, benefits that include improved heart and prostate health and better erectile function."  *See* Horvath Decl. Exh.

Horvath Decl. Exh. 33.

Horvath Decl. Exh. 34.

POM also developed a series of attack advertisements targeting what it saw as "imposter juices," always linking its accusations with the proven medical benefits that it touted for its pomegranate juice and that are the subject of Ocean Spray's counterclaims

16

in this suit.  Instead, POM disseminated a series of advertisements contrasting these "fake" or "imposter" juices with POM's supposedly proven medical benefits, invariably including a link to its web site so that consumers could easily determine which competitive products POM was talking about – including Ocean Spray's 100% Juice Cranberry & Pomegranate.  *See, e.g.,* Horvath Decl. Exh.  █ .

█ Horvath Decl. Exh. 37.

The "Pomegranate Truth" campaign evolved into the "Trust in POM" campaign in mid-2008.  This campaign again highlighted competitive juices, including specifically Ocean Spray's 100% Juice Cranberry & Pomegranate, driving home the message that "Only POM is backed by $25 million in medical research.  We're the only ones that can support the documented health benefits."  Horvath Decl. Exh █ .  In connection with this campaign, █

█ .  *See* Horvath Decl. Exhs. 39, 40.  The revamped campaign included stronger headlines such as "It's a Sin to Sell a Lie," "No Little White Grape, Pear or Apple Lies," and "The Juice that Launched a Thousand Imitators."  The body copy of these advertisements disparaged pomegranate-flavored beverages that POM claimed held themselves out as pomegranate juice, repeating that such products could not provide POM's scientifically proven medical benefits.  Again, links to POM's web site enabled consumers readily to identify these liars and imitators who could not provide POM's proven medical benefits – among them, Ocean Spray.  *See, e.g.*, Horvath Decl. Exh. █ .

The "Pomegranate Truth/Trust in POM" campaign █

17

1 

2 . *See*

3 Horvath Decl. Exh. 41 at POM-OS 14404 ().

### 2.    The Antioxidant Comparisons

POM has also compared itself consistently against Ocean Spray's flagship product, Cranberry Juice Cocktail, in its advertised comparisons of antioxidant capacity and in its discussions of the supposed resulting medical benefits.  For example, Horvath Decl. Exh. 42.

. *See id* at POM-OS 121787.

Horvath Decl. Exh. 43.  The same comparison,

(*see* Horvath Decl. Exh. 44), (*see* Horvath Decl. Exhs. 45, 46), (*see* Horvath Decl. Exh. 47).

. *See* Horvath Decl. Exh. 48.

Numerous other advertisements issued by POM and challenged in Ocean Spray's counterclaims compare POM's supposed antioxidant "power" with that of cranberry juice, which is Ocean Spray's primary product and also is readily associated in the minds of consumers with Ocean Spray.  *See, e.g.*, Horvath Decl. Exh. .

18

These two comparative aspects of POM's false medical advertising campaign at least create an issue of fact, and may even be sufficient to activate a presumption, that POM's false advertising injured Ocean Spray by taking sales away from various Ocean Spray products. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997) (comparative nature of advertising activates a presumption of causation and injury to plaintiff); *Time Warner Cable, Inc., v. Direct TV, Inc.*, 497 F.3d 144 (2d Cir. 2000) (comparative advertisement need not identify competitor by name to activate presumption). Even to the extent that POM's advertising was not comparative, its specific intent to target Ocean Spray, as evidenced by POM's own documents, would support a jury finding that the advertising injured Ocean Spray. "He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded." *Southland Sod*, 108 F.3d at 1146.

**D.   POM's Own Allegations and Evidence Necessarily Imply that Its Pomegranate Juice Competes with Ocean Spray Products and that Its Medical Marketing Draws Sales from Ocean Spray**

POM contends in this litigation that a substantial number of consumers of Ocean Spray's 100% Cranberry & Pomegranate would instead consume POM pomegranate juice if they knew the actual pomegranate juice content of Ocean Spray's product, and that these consumers constitute lost sales and injury to POM. POM proffers a consumer survey by expert witness Tom Bernthal purporting to show



. *See* Horvath Decl. Ex. 54 at 4.

19

POM's tortured attempt to present a theory of one-way competition – your product takes sales from ours, but ours doesn't take sales from yours – flies in the face of reality and logic.  Either the products at issue in this case compete or they do not.  Notwithstanding the attempted sophistry of POM's lawyers, the parties in this case essentially concede that the products at issue compete directly for at least some consumers.  Whether it is few or many consumers is disputed, but either way, POM's motion is rendered frivolous.

## IV.   CONCLUSION

POM's motion places it in the position of arguing that the primary advertising messaging that it used to sell its flagship product somehow could not have taken any sales away from Ocean Spray, the company that POM's own contemporaneous documents call ███████████████████████████  Meanwhile, although POM figured less prominently on Ocean Spray's competitive radar screen, it certainly was there, and Ocean Spray's documents show that ██████████████████████████  Moreover, from 2008 to the present, POM has featured a photo of Ocean Spray's 100% Juice Cranberry & Pomegranate on its web site and referred to it in advertising as an "imposter" beverage that cannot provide the supposedly proven medical benefits of POM.  Against this evidence of targeted and comparative advertising, POM's

20

only attempt to meet its high burden on summary judgment is to point to the fact that Ocean Spray has not advanced consumer evidence of lost sales, which is completely unnecessary under the case law, and to advance its inconsistent theory of one-way competition which is contradicted by its own documents.  Even in this case, where there are so few dollars in real damages at stake such that neither side can quantify them, there is sufficient competition for Lanham Act standing and injury.

For the foregoing reasons, POM's motion for summary judgment should be DENIED.


DATED:  September 12, 2011              GREENBERG TRAURIG, LLP


                                        By:    //s//:  Rick L. Shackelford
                                           Rick L. Shackelford
                                           Attorneys for Defendant & Counterclaimant,
                                           Ocean Spray Cranberries, Inc.

## Table of Contents

Page

I.       Introduction ......................................................................... 1

II.      Legal Standard .................................................................... 2

     A.    Proving Injury at Trial ................................................. 2

     B.    Ocean Spray's Burden on Summary Judgment ................. 5

III.     Argument............................................................................ 6

     A.    There Is Evidence that POM's Pomegranate Juice Competes with Ocean Spray Products to the Extent Needed to Satisfy the Lanham Act Element of Injury ................................... 6

     B.    POM's Pomegranate Juice Marketing Is Intended to Take Sales from Ocean Spray Products ................................... 8

         1.    POM has Consistently Identified Ocean Spray as a Competitor from Whom POM Seeks to Take Sales with its Medical Marketing ............................. 9

         2.    Ocean Spray Noted the Rise of POM as a Competitor and Reasonably Feared at Least Some Lost Sales from POM's False Advertising ............ 11

     C.    POM's Marketing Since the Introduction of Ocean Spray's Product at Issue Has Directly Compared POM Pomegranate Juice with this Product ........................... 14

         1.    The "Pomegranate Truth" Campaign .............................. 15

         2.    The Antioxidant Comparisons ...................................... 18

     D.    POM's Own Allegations and Evidence Necessarily Imply that Its Pomegranate Juice Competes with Ocean Spray Products and that Its Medical Marketing Draws Sales from Ocean Spray ..................................................... 19

i

IV.        CONCLUSION ....................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MSJ #1:  OCEAN SPRAY'S OPPOSITION TO POM'S MSJ RE: COUNTERCLAIMS

NY01/HORVA/1490272

*LA 129,846,484*

<u>Table of Authorities</u>

<u>Page</u>

**<u>Federal Cases</u>**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................................................. 5

*Appliance Recycling Centers of Am. Inc. v. JACO,*
   378 Fed. Appx. 652 (9th Cir. 2010) ....................................................... 5

*Braxton-Secret v. A.H. Robins Co.,*
   769 F.2d 528 (9th Cir. 1985) ......................................................... passim

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., Inc.,*
   284 F.3d 302 (1st Cir. 2002) ................................................................... 2

*Direct TV, Inc.,*
   497 F.3d 144 (2d Cir. 2000) .............................................................. 3, 19

*Harper House, Inc. v. Thomas Nelson, Inc.,*
   889 F.2d 197 (9th Cir. 1989) ................................................................... 4

*Lindy Pen Co. v. Bic Pen Corp.,*
   982 F.2d 1400 (9th Cir. 1993) ................................................................ 4

*Logan v. Burgers Ozark County Cured Hams Inc.,*
   263 F.3d 447 (5th Cir. 2001) .................................................................. 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ................................................................................. 5

*Mattos v. Agarano,*
   590 F.3d 1082 (9th Cir. 2010) ................................................................ 5

*McNeilab, Inc. v. Am Home Prods. Corp.,*
   848 F.2d 34 (2d Cir. 1988) ...................................................................... 3

*Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharm. Co.,*
   129 F. Supp. 2d 351 (D.N.J. 2000) ........................................................ 3

*Ortho Pharmaceutical Corp. v. Cosrophar, Inc.,*
   32 F.3d 690 (2d Cir.1994) ....................................................................... 3

*PDK Labs v. Friedlander,*
   103 F.3d 1103 (2d Cir. 1997)................................................................... 3

*SEC v. Seaboard Corp.,*
   677 F.2d 1301 (9th Cir. 1982) ................................................................ 5

iii

MSJ #1:  OCEAN SPRAY'S OPPOSITION TO POM'S MSJ RE: COUNTERCLAIMS

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ................................................. 3, 4, 19

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
  2011 WL 3198226 (9th Cir. 2011) .......................................4, 14, 15, 18

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*,
  661 F.2d 272,  (2d Cir. 1981) ................................................. 2

*Warner-Lambert Co. v. Breathasure, Inc.*,
  204 F.3d 87 (3d Cir. 2000) ................................................. 2, 4

## **Federal Rules**

Fed. R. Civ. P. 56(c) ................................................. 5

iv

MSJ #1:  OCEAN SPRAY'S OPPOSITION TO POM'S MSJ RE: COUNTERCLAIMS

NY01/HORVA/1490272

*LA 129,846,484*