1   ANDREW S. CLARE (SBN 050289)
    aclare@loeb.com
2   LOEB & LOEB LLP
    10100 Santa Monica Blvd., Ste. 2200
3   Los Angeles, California 90067-4120
    Telephone:  310-282-2000
4   Facsimile:   310-282-2200

5   CHRISTOPHER VAN GUNDY (SBN 152359)
    cvangundy@roll.com
6   SOPHIE N. FROELICH (SBN 213194)
    sfroelich@roll.com
7   Roll Law Group P.C.
    11444 West Olympic Blvd, 7th Floor
8   Los Angeles, California 90064-1557
    Telephone:  310-966-8400
9   Facsimile:   310-966-8810

10  BERTRAM FIELDS (SBN 24199)
    bfields@ggfirm.com
11  GREENBERG GLUSKER FIELDS
            CLAMAN & MACHTINGER LLP
12  1900 Avenue of the Stars, 21st Floor
    Los Angeles, CA  90067
13  Telephone:  310-553-3610
    Facsimile:   310-553-0687
14
    Attorneys for Plaintiff and Counterdefendant
15  POM WONDERFUL LLC

16                  UNITED STATES DISTRICT COURT

17                 CENTRAL DISTRICT OF CALIFORNIA

18  POM WONDERFUL LLC,              ) Case No. CV-09-00565 DDP (RZx)
                                    )
19          Plaintiff,              ) **PLAINTIFF POM WONDERFUL
                                    ) LLC'S NOTICE OF MOTION AND
20      vs.                         ) MOTION *IN LIMINE* NO. 9 TO
                                    ) EXCLUDE THE TESTIMONY OF
21                                  ) DEFENDANT OCEAN SPRAY
    OCEAN SPRAY CRANBERRIES,        ) CRANBERRIES, INC.'S EXPERT
22  INC., et al.,                   ) WITNESS JEFFREY BLUMBERG,
                                    ) PH.D.**
23                                  )
            Defendants.             ) **[PUBLIC REDACTED VERSION]**
24  _____)
                                    )
25   AND RELATED COUNTERCLAIMS.  }  Hon. Dean D. Pregerson
                                    )
26                                  ) **Date:        October 31, 2011
                                    ) Time:        11:00 a.m.
27                                  ) Place:       Courtroom 3**
28

{057086.1}

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Pom Wonderful LLC ("Pom") will and hereby does, on October 31, 2011, at 11:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 3 of the United States District Court for the Central District of California, 312 North Spring Street, Los Angeles, California, before the Honorable Dean D. Pregerson, United States District Judge, move *in limine* for an Order excluding Defendant Ocean Spray Cranberries, Inc.'s ("Ocean Spray") from presenting any testimony or evidence from Mr. Jeffrey Blumberg, a disclosed expert witness for Ocean Spray, regarding Pom's advertising, as discussed in his expert report served in this case on September 22, 2010.

All testimony and opinions from Mr. Blumberg concerning scientific research on pomegranates, and advertising, marketing, or consumer perception, or concerning Pom's advertising with respect to the health benefits of pomegranates, should be excluded under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); and Federal Rules of Evidence 702, 703, 402, 403, 601 and 602.  His opinions are immaterial to this case as a matter of law; they lack foundation and reliability; and they are also highly prejudicial and likely to mislead and confuse the jury.

This Motion is supported by this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the attached Declaration of Azadeh Allayee, the [Proposed] Order lodged herewith, such additional evidence and argument as may be presented at the hearing on this Motion, all of the pleadings, files and records in this proceeding, and such other evidence as may later be

/ / /

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

submitted.  The Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 22, 2011.

Dated:  October 11, 2011                 ROLL LAW GROUP, P.C.


                                         By:___/s/*Christopher Van Gundy*_____
                                         Christopher Van Gundy
                                         Attorneys for Plaintiff
                                         POM WONDERFUL LLC

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..............................................................1

II.     ARGUMENT ....................................................................4

III.    UNDER THE LANHAM ACT MR. BLUMBERG WAS REQUIRED TO – BUT EXPLICITLY DID NOT – PROVIDE AN OPINION THAT POMEGRANATES DO NOT HAVE HEALTH BENEFITS, AND HE PROVIDES NO OPINION REGARDING FALSITY ........................................4

IV.     MR. BLUMBERG'S EXPERT REPORT AND OPINIONS ARE PREMISED ENTIRELY ON FDA GUIDELINES THAT ARE INAPPOSITE TO THIS CASE..........................................................13

V.      MR. BLUMBERG IS INCORRECT IN DETERMINING WHAT LEVEL OF SCIENCE IS REQUIRED FOR POM TO BE PERMITTED TO COMMUNICATE HEALTH BENEFITS TO CONSUMERS  .......................15

        A.     The FDA Is Subject To The "Credible Evidence" Standard ...................15

VI.     MR. BLUMBERG'S OPINIONS ARE ALSO PREMISED, ADMITTEDLY, ON HIS INTERPRETATION OF POM'S ADVERTISING, OF WHICH HE HAS NO EXPERTISE AND IS NOT QUALIFIED TO RENDER AN OPINION.........................................................18

VII.    MR. BLUMBERG'S RELIANCE ON OPINIONS AND HEARSAY FROM GOVERNMENTAL OR QUASI-GOVERNMENTAL ENTITIES REGARDING POM'S ADVERTISING ARE WITHOUT FOUNDATION   ..............................................................23

VIII.   CONCLUSION  ..............................................................23

{057011.1}

1

## <u>TABLE OF AUTHORITIES</u>

2

3 CASES

4  <u>Academy of Motion Picture Arts & Sciences v. Creative House Promotions,</u>
5  <u>Inc.</u>, 944 F.2d 1446, 1457 (9th Cir. 1991) ................................................................ 5

6  <u>Alliance for Natural Health v. Sebelius</u>,
7  714 F. Supp. 2d 48 (D.D.C. 2010) ................................................................ 17

8  <u>Andrew v. Metro North Commuter R. Co.</u>,
   882 F.2d 705 (2d Cir. 1989) ................................................................ 22

9  <u>Daubert v. Merrell Dow Pharms., Inc.</u>,
10  509 U.S. 579 (1993) ................................................................ 1, 4, 13, 21

11  <u>Energy Four, Inc. v. Dornier Medical Systems, Inc.</u>,
   765 F.Supp. 724 (N.D.Ga.1991) ................................................................ 6

12  <u>Falcon Stainless, Inc. v. Rino Cos.</u>,
13  2008 WL 5179037 (C.D. Cal. Dec. 9, 2008) ................................................................ 11

14  <u>Gen. Elec. Co. v. Joiner</u>,
   522 U.S. 136 (1997) ................................................................ 21

15  <u>IQ Products Co. v. Pennzoil Products Co.</u>,
16  305 F.3d 368 (2002) ................................................................ 21

17  <u>Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer</u>
   <u>Pharms. Inc.</u>,
18  19 F.3d 125 (3d Cir. 1994) ................................................................ 6

19  <u>K & N Eng'r, Inc. v. Spectre Performance</u>,
   2011 WL 43887094 (C.D. Cal. Sept. 20, 2011) ................................................................ 12

20
   <u>McNeil-P.C.C., Inc. v. Bristol-Meyers Squibb Co.</u>,
21  938 F.2d 1544 (2d Cir. 1991) ................................................................ 11

22  <u>Munchkin, Inc. v. Playtex Prods., LLC</u>,
   2011 WL 2174383(C.D. Cal. Apr. 11, 2011) ................................................................ 11, 12
23

24  <u>National Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.</u>
   107 Cal. App. 4th 1336 (2003) ................................................................ 5, 10

25  <u>P & G. Co. v. Kimberly–Clark Corp.</u>,
26  569 F.Supp.2d 796 (E.D.Wis.2008) ................................................................ 7

27  <u>Pearson v. Shalala</u>,
   164 F.3d 650 (D.C. Cir. 1999) ................................................................ 16, 17

28  <u>Pearson v. Shalala</u>,
   130 F. Supp. 2d 105 (D.D.C. 2001) ................................................................ 17

{057011.1}

Pearson v. Thompson,
   141 F. Supp. 2d 105 (D.D.C. 2001)...........................................................15, 17

Procter & Gamble,
   747 F.2d at 119 (2d Cir.1984) ............................................................6, 10, 12

Rhone-Poulence Rorer Pharms., Inc. v. Marion Merrell Dow, Inc.,
   93 F3d 511 (8th Cir. 1996)....................................................................11, 12

Roberston v. Norton Co.,
   148 F. 3d 905 (8th Cir. 1998)........................................................................21

Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.,
   902 F.2d 222 (3d Cir. 1990).........................................................2, 5, 6, 10

Toro Co. v. Textron, Inc.,
   499 F.Supp. 241 (D.Del.1980) ........................................................................6

United Indus. Corp. v. The Clorox Co.,
   140 F.3d 1175 (8th Cir. 1998)........................................................................5

United States v. Downing,
   753 F.2d 1224 (3d Cir. 1985)........................................................................4

United States v. Jackson,
   425 F.2d 574 (D.C. Cir. 1970) .................................................................22, 23

Weisgam v. Marley Co.,
   169 F. 3d 514 (8th Cir. 1999)........................................................................21

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,
   254 F.3d 706 (8th Cir. 2001)........................................................................20

Whitaker v. Thompson,
   248 F. Supp. 2d 1 (D.D.C. 2002) ................................................................16

**STATUTES**

United States Code
   21 U.S.C. 343(r)(3) ........................................................................................13

Code Federal Regulations
   21 CFR 101.14(c) ...........................................................................................14

J. Thomas McCarthy,
   McCarthy on Trademarks and Unfair Competition § 27.62
   (Thomson Reuters 2011); *BASF*, 41 F.3d at 1090  ........................................5

{057011.1}

I. **INTRODUCTION**

With this Motion, Pom seeks to exclude the opinions of Defendant Ocean Spray Cranberries, Inc.'s ("Ocean Spray") expert witness, Jeffrey Blumberg, under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); and Federal Rules of Evidence 702, 703, 402, 403, 601 and 602. His opinions lack foundation and reliability; and they are also highly prejudicial and likely to mislead and confuse the jury.

In this case, Ocean Spray improperly seeks to impose Lanham Act liability on Pom for false advertising under a "lack of substantiation" theory: "Pom lacks competent and reliable scientific evidence" supporting its health claims (Counterclaims, ¶¶ 16, 20, 29, 32, 51; 13, 14); and it questions whether Pom's "disease-related and mitigation, treatment, prevention and/or cure of disease claims [in its advertising] are substantiated" (Id. ¶ 17). Ocean Spray attempts to prove this "lack of substantiation theory" primarily through the opinion of its expert witness, Mr. Blumberg,

Ocean Spray's theory of liability is fundamentally flawed. Its reliance on a lack of substantiation theory is wrong as a matter of law, and Mr. Blumberg's opinion is therefore useless.

{057086.1}

█    Finally, the idea that RCTs are required here is nonsensical and unsupported. Thus, Mr. Blumberg's opinions should be excluded on the following four grounds:

First, under the Lanham Act Ocean Spray is required to demonstrate falsity with respect to Pom's claims about pomegranates' health benefits in its advertising. Sandoz Pharms. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 229 (3d Cir. 1990). Mr. Blumberg fails to provide any evidence of falsity. He does not opine that pomegranates *lack* health benefits, nor does take issue, much less contradict, the opinions of Pom's expert witness, Dr. David Heber, that pomegranates *do* have numerous health benefits. Instead, █

█

█   As a matter of law, this is not evidence of falsity.

█

{057086.1}

Accordingly, his assessment of Pom's science is unreliable and lacking in proper foundation, and should not be admitted.

Finally, Mr. Blumberg offers ultimate legal opinions far outside of the scope of his expertise. However, Mr. Blumberg is plainly not qualified to give an opinion on Pom's advertising and what that advertising actually communicates to consumers, which opinion is implicit in the essentially foregone conclusion that he offers that Pom's advertising allegedly communicates "disease claims." This opinion is entirely without foundation and should be excluded. Mr. Blumberg is a scientist, not a marketing or advertising expert – indeed, he is not even a medical doctor! Thus he is not qualified to give an opinion on what messages are conveyed by an advertisement and therefore whether the science ultimately supports the statements conveyed. Again, Mr. Blumberg is not an advertising or food labeling expert. Any opinion he has based upon what regulators have stated regarding Pom's advertising or labeling lacks foundation and is therefore irrelevant.

{057086.1}

1    Mr. Blumberg's expert testimony is designed purely as a Trojan horse that
2 will insert irrelevant, unfounded, but highly prejudicial opinions at trial.  It should
3 be excluded in its entirety.

4 ## II.    ARGUMENT

5    In deciding whether to admit scientific testimony under Federal Rule of
6 Evidence 702, the district court has a gatekeeping responsibility, and must ensure
7 that proffered testimony is not only relevant but reliable.  Daubert v. Merrell Dow
8 Pharms., Inc., 509 U.S. 579, 589 (1993).  Rule 702 requires that the evidence or
9 testimony assist the trier of fact to understand the evidence or to determine a fact in
10 issue.  Id. at 591.  "Expert testimony which does not relate to any issue in the case is
11 not relevant and, ergo, non-helpful."  Id.; see also United States v. Downing, 753
12 ¶F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702-and
13 another aspect of relevancy-is whether expert testimony proffered in the case is
14 sufficiently tied to the facts of the case that it will aid the jury in resolving a factual
15 dispute.").

16 ## III.    UNDER THE LANHAM ACT MR. BLUMBERG WAS REQUIRED TO
17 – BUT EXPLICITLY DID NOT – PROVIDE AN OPINION THAT POMEGRANATES DO NOT HAVE HEALTH BENEFITS, AND HE PROVIDES NO OPINION REGARDING FALSITY.

18    Ocean Spray's case is premised entirely on its allegation that Pom's
19 advertising communicates certain statements about the health benefits of
20 pomegranates that are (a) literally false; or (b) misleading, meaning that extrinsic
21 evidence (such as surveys) shows that specific advertising, even if it literally true,
22 nonetheless deceives a significant portion of the consumers who view it.  However,
23 Ocean Spray's only expert on the scientific research on health benefits of
24 pomegranates, Mr. Blumberg, fails to give any opinion that pomegranates *lack*
25 health benefits.  Instead, he merely attempts to poke holes in the scientific research
26 that Pom has sponsored that shows pomegranates do have various benefits.  This

27
28

{057086.1}

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

1   does not meet the standard for proving that advertising is false or misleading under

2   the Lanham Act.[1]

3        Attempting to evade the burden of proof that it cannot meet, Ocean Spray

4   tried to broadly characterize all of Pom's advertising as "establishment claims,"

5   meaning that they are actually claims about what specific tests show.  Given that the

6   vast majority of ads attached to Ocean Spray's counterclaims mention no "tests" at

7   all, Ocean Spray's allegations of "establishment claims" are patently incorrect.[2]

8   Regardless, whether Pom's ads are labeled "establishment claims" or "non-

9   establishment claims," Ocean Spray fails to meet the test of <u>falsity</u> – via Mr.

10  Blumberg's opinions – for either type of claim.

11       Ocean Spray has the burden to affirmatively prove at trial that each claim at

12  issue (whether literal or proven via extrinsic evidence to have been communicated

13  by implication) is actually false.  <u>Sandoz</u>, 902 F.2d at 228; <u>National Council Against</u>

14  <u>Health Fraud</u>, 107 Cal. App. 4th at 1350.  However, Mr. Blumberg, who is the only

15  Ocean Spray witness to speak to the scientific research on pomegranates, fails to

16  offer any opinion of falsity, *i.e.*, that contrary to what Pom has said, there are *no*

17

---

18  [1]    Insofar as Ocean Spray also asserts its counterclaims under Cal. Bus. & Prof.
19  Code §§ 17200 and 17500, such state law claims are "substantially congruent" to a
    Lanham Act claim.  <u>Academy of Motion Picture Arts & Sciences v. Creative House</u>
20  <u>Promotions, Inc.</u>, 944 F.2d 1446, 1457 (9th Cir. 1991).
    [2] Ocean Spray alleges that the following Pom advertisements, among others, are
21  "establishment" claims, even though none of the advertisements reference (or even
22  allude to) tests or studies: "Heart therapy Pom Wonderful Pomegranate Juice.  The
    Antioxidant Superpower" (<u>see</u> Counterclaims, Ex. 5); "Cheat Death.  The
23  antioxidant power of pomegranate juice" (<u>id.</u>, Ex. 7, p. 35); "Death Defying.  The
24  antioxidant power of pomegranate juice" (<u>id.</u>, p. 36); and "Health's Angel.  The
    Antioxidant Superpower."  *Id.*, p. 39.  Ocean Spray's effort to convert these non-
25  establishment claims into establishment claims is unavailing for the simple reason
26  that these claims are not sufficiently specific and they do not even reference any
    tests.  <u>United Indus. Corp. v. The Clorox Co.</u>, 140 F.3d 1175, 1182 (8th Cir. 1998);
27  5 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 27.62
28  (Thomson Reuters 2011); *BASF*, 41 F.3d at 1090.

1  health benefits from pomegranates.  Thus, while all he does is attack Pom's science,

2  Mr. Blumberg does not express an opinion that the results of each of the studies

3  Pom has relied upon are false.  ████████████████████████████████████████

4  ████████████████████████████████████████████████  That is the wrong

5  standard.

6       To be entitled to relief under the Lanham Act, a plaintiff must prove that a

7  defendant's advertising claim is actually false or misleading, not that it is

8  "unsubstantiated."  See, e.g., United Indus., 140 F.3d at 1182 ("When challenging a

9  claim of superiority that does not make express reference to testing, a plaintiff must

10 prove that the defendant's claim of superiority is actually false, not simply unproven

11 or unsubstantiated."); Johnson & Johnson, 19 F.3d at 130 ("A plaintiff must prove

12 that the claim is false or misleading, not merely that it is unsubstantiated.").

13      Additionally, the Courts are clear that to meet this burden – even for

14 establishment claims – merely poking holes in the science is insufficient.   Procter &

15 Gamble, 747 F.2d at 119 (2d Cir.1984) ("each plaintiff bears the burden of showing

16 that the challenged advertisement is false and mislead... not merely that it is

17 unsubstantiated by acceptable tests or other proof"); see also Sandoz, 902 F.2d at

18 228 (agreeing with Proctor & Gamble that plaintiff bears the burden of showing that

19 the challenged ad is false or misleading as opposed to simply unsubstantiated);

20 Energy Four, Inc. v. Dornier Medical Systems, Inc., 765 F.Supp. 724, 732

21 (N.D.Ga.1991) ("To succeed on the merits it is not enough to show that the

22 representation is facially ambiguous or unsubstantiated—a plaintiff must show that

23 the representations are (1) false or (2) mislead by tending to create confusion.")

24 (emphasis added); Toro Co. v. Textron, Inc., 499 F.Supp. 241, 253 (D.Del.1980)

25 ("The plain language of Section 43(a), which prohibits false rather than

26 unsubstantiated representations, requires that a plaintiff establish not merely that the

27 defendant's claim lacks substantiation but also that it is false or deceptive.")

28

6

{057086.1}

In <u>P & G. Co. v. Kimberly–Clark Corp.</u>, 569 F.Supp.2d 796, 803 (E.D.Wis.2008), the Court explained the difference between falsity and lack of substantiation succinctly:

"What these distinctions mean is that when the existence or results of tests are not incorporated into the advertisement, as here, a plaintiff may not meet its burden of showing falsity merely by leveling attacks at any tests that might happen to exist; such attacks are simply not affirmative evidence of falsity. *It is one thing to say 'that is false,' but another thing altogether to say 'you have no proof.' In the Lanham Act context, the latter is not enough*." (emphasis added).

Opining that Pom purportedly "has no proof" is all that Mr. Blumberg has done.   He fails to provide any opinion that what Pom has said is actually *false*, i.e., that pomegranates do *not* have health benefits.

<u>Antioxidants.</u>  As a preliminary matter, he never opines that antioxidants do not have health benefits.

<u>See</u> Allayee Decl, ¶ <u>14</u>, Exh. M (Blumberg Depo. Transc. pgs. 50:19-51:1 <u>see also</u> 60:7-13.

<u>See id.</u>, Exh. M (pg. 50:13-18, 33:16-19).

<u>Id.</u>, Exh. M (pg. 52:1-16).

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG



Prostate Health.  In the area of prostate health,

Id., Exh. M (pgs. 113:11-114:23, 120:10-121:10, 121:11-122:7, 123:17-124:6, 125:13-126:4, 127:25-129:12).

Id., Exh. M (pgs. 113:11-114:23; 114:9-24).



Erectile health/benefit.  In connection with erectile health/erectile benefit.

Id. (pg. 34:17-35:15).

Id. (pgs. 35:11-15, 36:3-22).

{057086.1}

1   █████████████████████████████████████████

2   ████████████████ Rather, his opinion is a classic substantiation, <u>not</u>

3   Lanham Act analysis.

4        <u>Cardiovascular disease.</u>  In this area as well,

5   ███████████████████████████████████████████

6   ███████████████████████████████████████████

7   ████████████████████████ <u>Id.</u> (pg. 119:12-25).

8        Thus, Mr. Blumberg demonstrates repeatedly that he has no opinion as to the

9   *falsity* of any statements by Pom.  Rather, he only has an inapplicable

10   "substantiation" analysis to offer that cannot be used to determine a Lanham Act

11   claim.

12        At trial, Mr. Blumberg will also have to concede, as he has expressly done in

13   depositions in other litigation by Pom against other juice companies, that the sole

14   difference between his opinion that of Pom's science expert, Dr. David Heber, is

15   merely "philosophical", *i.e.* at what point can one disseminate information to the

16   public.  Thus, other than to challenge the substantiation for Pom's statements,

17   Blumberg expresses no opinion that the science is not valid or that the products

18   didn't have the benefits stated.  Blumberg's expert testimony, therefore, should be

19   excluded because it does not assist the trier of fact in determining falsity.

20        Nor has Mr. Blumberg offered scientific literature or conducted his own

21   studies negating the truth of Pom's claims.  <u>National Council Against Health Fraud</u>,

22   107 Cal. App. 4th at 1348 (where plaintiff failed to conduct its own tests or attempt

23   to prove falsity through scientific literature, court refused to shift burden of proof to

24   defendant to substantiate its advertising claims).  Mr. Blumberg will not be able to

25   affirmatively prove falsity of Pom's claims at trial.  <u>See</u>, <u>e.g.</u>, <u>Proctor & Gamble</u>,

26   747 F.2d at 119 (liability could not be imposed for false advertising where plaintiff

27   failed to adduce evidence demonstrating that the challenged non-establishment

28   claim was false); <u>Sandoz</u>, 902 F.2d at 228 (same).

{057086.1}

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

Further, even assuming arguendo that Pom makes "establishment" claims in a
challenged advertisement, Ocean Spray still cannot prove literal falsity.  Its burden
of proof in this area is a significant one; "it must do more than simply expose
methodological weaknesses in [Pom's] test[s]." Munchkin, 2011 WL 2174383, at
*4 (*quoting Southland Sod*, 108 F.3d at 1139) (internal quotation marks and
citations omitted), citing McNeil-P.C.C., Inc. v. Bristol-Meyers Squibb Co., 938
F.2d 1544, 1549 (2d Cir. 1991) ("To prove that an advertising claim is literally false,
a plaintiff must do more than show that the tests supporting the challenged claim are
unpersuasive.").

Mr. Blumberg could have attempted to prove, through an analysis of Pom's
studies, that the studies relied on by Pom did not in fact establish Pom's claims.
See, e.g., McNeil-P.C.C., 938 F.2d at 1549-1550 (defendant's advertising claim
deemed false where plaintiff affirmatively demonstrated that a proper analysis of the
data in defendant's tests did not establish that its product provided superior pain
relief).  However, he undertook no such analysis.

Moreover, Ocean Spray has not conducted its own studies in an attempt to
show that Pom's health benefit claims are literally false. As such, unlike in Falcon
Stainless, Inc. v. Rino Cos., 2008 WL 5179037, at *5 (C.D. Cal. Dec. 9, 2008)
(plaintiff contradicted defendant's tests with its own set of tests) and Rhone-
Poulence Rorer Pharms., Inc. v. Marion Merrell Dow, Inc., 93 F3d 511, 515 (8th
Cir. 1996) (holding plaintiff failed to prove falsity where its own independent
studies did not refute defendant's studies), Mr. Blumberg has not proven literal
falsity by showing that Pom's tests are contradicted by Pom's own, Ocean Spray's,
or other scientific tests.

Additionally, Ocean Spray cannot meet its burden to prove literal falsity by its
purported attacks on the validity of Pom's studies. ███████████████

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN
SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

1

2       He sums up these attacks

3 <u>Id.</u> at p. 5.  However, Ocean Spray has

4 done nothing more than critique and expose alleged methodological weaknesses in

5 Pom's studies.[3]   This does not show falsity.

6       Such trivial and meritless attacks are insufficient under the Lanham Act.  <u>See</u>

7 <u>Proctor & Gamble</u>, 747 F.2d at 119 (injunctive relief denied despite competitor

8 attacking advertiser's tests and results as unreliable and the product of questionable

9 data manipulated to reach a pre-designed conclusion); <u>K & N Eng'r, Inc. v. Spectre</u>

10 <u>Performance</u>, 2011 WL 43887094, at *12 (C.D. Cal. Sept. 20, 2011) (given "the

11 'fair amount of leeway' that should be afforded advertisers," finding claims not

12 literally false where advertisements were based on sufficiently reliable tests despite

13 variances in tests results), citing <u>Rhone-Poulence Rorer Pharms.</u>, 93 F.3d at 515

14 (upholding district court's finding that defendant did not falsely advertise study

15 where the study was conducted by standards accepted within the scientific

16 community even though plaintiff argued defendant's study was seriously flawed in

17 design and execution); <u>Munchkin</u>, 2011 WL 2174383, at *6-12 (denying injunctive

18 _____

19 [3] Although Ocean Spray argues that

20

21 No. 215, Ocean Spray's summary judgment motion No. 4 on unclean hands, pg. 20:4-5),

22

23       <u>See</u> Allayee Decl., ¶ 8, Exh. G, (Blumberg Expert Report at pp. 8-9).

24

25       Moreover, Ocean Spray's assertion is contradicted by Blumberg

26

27 <u>Id.</u>

28       <u>Id.</u>

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

1  relief finding plaintiff failed to prove defendant's tests were unreliable even though

2  plaintiff attacked the testing design and methodology).

3       Accordingly, Mr. Blumberg's opinions failed to move the needle at all in

4  proving Ocean Spray's allegations against Pom.  Nothing about his report or his

5  opinions provide evidence of falsity, which is precisely what is required for Ocean

6  Spray's claims.  As such, his testimony at trial will be irrelevant and should be

7  excluded.

8  **IV.   MR. BLUMBERG'S EXPERT REPORT AND OPINIONS ARE**
   **PREMISED ENTIRELY ON FDA GUIDELINES THAT ARE**
9  **INAPPOSITE TO THIS CASE.**

10       Mr. Blumberg's expert report also demonstrates his lack of qualifications to

11  render the opinions he offers and the lack of reliability of the evidence that he used.

12  Mr. Blumberg ████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████  See Allayee Decl.,

15  ¶ 8, Exh. G, (Blumberg Report, pg. 5, "████████████████████████████).

16       However, nowhere in his report does Mr. Blumberg explain why this

17  particular information promulgated by the FDA, and which states on its face that it

18  "Contains Nonbinding Recommendations," is the correct standard for assessing the

19  validity of a scientific study in this case or across all claims.  Accordingly, Mr.

20  Blumberg's expert report fails to demonstrate that his testimony is "the product of

21  reliable principles and methods."  Fed. R. Evid. 702(2).  Under the longstanding

22  rules of Daubert, the proposed expert testimony "must be supported by appropriate

23  validation-i.e., 'good grounds,' based on what is known."  Daubert, at 590.

24       Furthermore, the FDA Guidance Mr. Blumberg relies on states in its

25  Introduction that it contains the FDA's "current thinking on 1) the process for

26  evaluating the scientific evidence for a health claim, 2) the meaning of the

27  significant scientific agreement (SSA) standard in section 403(r)(3) of the Federal

28  Food, Drug, and Cosmetic Act (the Act) (21 U.S.C. 343(r)(3)) and 21 CFR

{057086.1}

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN
SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

101.14(c), and 3) credible scientific evidence to support a *qualified health claim*." Nowhere in Mr. Blumberg's report does he demonstrate that a single one of the many Pom advertisements that he attaches to his report, or any other statements by Pom, actually constitute a "health claim" or "disease claim" *as defined by the FDA.* Mr. Blumberg simply asks the trier of fact to accept, without foundation, that every Pom advertisement attached to his report qualifies as a "health claim."

Additionally, this is not a case even brought under FDA regulations, or the FFDCA, for any FDA standard to be applicable to either Pom's science or statements it has made to consumers. As discussed above, Ocean Spray's claims are brought under the Lanham Act, which requires a demonstration of falsity, not a demonstration that Pom failed to meet a regulatory standard.

Finally, Mr. Blumberg is not qualified to opine on whether any of Pom's advertisements constitute a health claim because he is not a FDA expert or scholar with demonstrated experience dealing with health claims subject to approval by the FDA. Mr. Blumberg



Moreover, the vast majority of the statements by Pom that Mr. Blumberg attacks are contained in Pom's *advertisements*, not labeling or branding of Pom's products themselves. Mr. Blumberg apparently fails to appreciate the fact that food advertising is regulated by the Federal Trade Commission ("FTC"), and not the

{057086.1}

FDA.  See, e.g., Memorandum of Understanding Between Federal Trade Commission and the Food and Drug Administration, 36 Fed. Reg. 18, 539 (Sep. 16, 1971).  As such, Mr. Blumberg is, without foundation or explanation, using the standard applied by the FDA to items that the FDA does not regulate.

Mr. Blumberg's lack of expertise with respect to the FDA, and his application of the wrong legal standard, demonstrate that his opinion on the scientific studies he examined lack foundation.  Accordingly, his opinion should be excluded.

**V.     MR. BLUMBERG IS INCORRECT IN DETERMINING WHAT LEVEL OF SCIENCE IS REQUIRED FOR POM TO BE PERMITTED TO COMMUNICATE HEALTH BENEFITS TO CONSUMERS.**

**A.     The FDA Is Subject To The "Credible Evidence" Standard.**

In providing his expert opinion regarding the health benefits of pomegranate juice, Blumberg adopts what he calls an ███████████ review approach which ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████..."  See Allayee Declaration, ¶ 8, Exh. G (Blumberg Report, pg. 5) (emphasis added).  Thus, according to Blumberg, █████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████  See, e.g., Pearson v. Thompson, 141 F. Supp. 2d 105, 110 (D.D.C. 2001) ("Pearson III") (government may not suppress commercial speech by requiring excessively high levels of

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

supporting scientific evidence and that a claim may not be barred "simply because the scientific literature is inconclusive."); <u>Whitaker v. Thompson</u>, 248 F. Supp. 2d 1, 13 (D.D.C. 2002) ("<u>Whitaker I</u>") (where only one-third of studies show claimed benefit and were criticized as procedurally flawed, the court held that suppression of information was improper.)   Instead, in the context of commercial speech, an advertiser or marketer is simply required to have credible evidence before communicating a particular claim.

As background, the Nutrition Labeling and Education Act of 1990 ("NLEA") amended the FDCA to create a "'safe harbor' from the 'drug' designation for foods ... labeled with health claims." <u>*Alliance for Natural Health v. Sebelius*</u>, 714 F. Supp. 2d 48, 51 (D.D.C. 2010).   For labeling to bear such health claims under the NLEA, the FDA required "that 'significant scientific agreement,' based on the 'totality of publicly available scientific evidence' support the claim." <u>Id.</u>  Because the NLEA did not provide for approval of health claims that are based on less than significant scientific agreement, the FDA previously declined to approve health claims that were supported by credible, but inconclusive scientific evidence:  "The problem with these claims, according to the FDA, was not a dearth of supporting evidence; rather, the agency concluded that the evidence was inconclusive for one reason or another and thus failed to give rise to 'significant scientific agreement.'" <u>Pearson v. Shalala,</u> 164 F.3d 650, 653 (D.C. Cir. 1999) ("*Pearson I*").

In the landmark <u>Pearson I</u> case, the D.C. Circuit applied the commercial speech test in <u>Central Hudson</u>, 447 U.S. at 557, to invalidate the FDA's position:

> that health claims lacking "significant scientific agreement" are
> inherently misleading and thus entirely outside the protection of the
> First Amendment; and second, that even if the claims are only
> potentially misleading, . . . the government is not obliged to consider
> requiring disclaimers in lieu of an outright ban on all claims that lack
> significant scientific agreement.

---

16

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

{057086.1}

Pearson I, 164 F.3d at 655.   Pearson I held that the claim qualification requirement was the government's burden.  It was not incumbent upon a claim proponent to establish a suitable qualification as a condition precedent to speech. Rather, it was incumbent on the government to prove that no qualification would suffice as a less speech restrictive alternative to outright claim suppression.  164 F.3d at 659. Furthermore, in Pearson III, in the context of the FTC's enforcement action, the district court identified the relevant burden on the administrative agencies:

> [T]he FDA [may] impos[e] an outright ban on a claim where evidence in support of the claim is qualitatively weaker than evidence against the claim-for example, where the claim rests on only one or two old studies or where the evidence in support of a claim is outweighed by evidence against the claim. Pearson II fleshes out the term "against": The mere absence of significant affirmative evidence in support of a particular claim...does not translate into negative evidence "against" it.

Id. at 112 (citing Pearson I, 164 F.3d at 660 & n.10; Pearson v. Shalala, 130 F. Supp. 2d 105, 115 (D.D.C. 2001) ("Pearson II") (internal citations omitted; emphasis added).  Accordingly, the "question which must be answered under Pearson[I] is whether there is any 'credible evidence.'" Pearson II, 130 F .Supp. 2d at 118 (emphasis added).More recently, in Alliance for Natural Health, the district court overturned the FDA's rejection of various health claims regarding the role of the nutrient mineral, selenium, in the prevention of various cancers, based on evidence of selenium's antioxidant effects (among others) that was **credible** but not conclusive.  714 F. Supp, 2d at 70-71.  Accordingly, Pearson I and its progeny unequivocally demonstrate that commercial speech will and should not be stifled when credible evidence exists to support the particular claim at issue.In short, Blumberg erroneously and inappropriately applies an FDA drug standard of

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

{057086.1}

"significant scientific agreement," which has been soundly rejected by the courts on First Amendment grounds, to evaluate POM's scientific research in this action.  For these reasons, Blumberg's expert testimony should be disregarded.

**VI.    MR. BLUMBERG'S OPINIONS ARE ALSO PREMISED, ADMITTEDLY, ON HIS INTERPRETATION OF POM'S ADVERTISING, OF WHICH HE HAS NO EXPERTISE AND IS NOT QUALIFIED TO RENDER AN OPINION.**

There is no connection between the disclosed expertise of Mr. Blumberg and his opinions on Pom's advertising.  His opinions, however, are imbued with quips and conclusions ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████              See Allayee Decl., ¶ 8, Exh. G (Blumberg Report, pg. 5).  How consumers react to particular advertising cannot, as a matter of law, be assumed in any Lanham Act case.  The message conveyed must be measured by actual consumer's surveys and testing, of which Mr. Blumberg has none upon which to base his opinion.

████████████████████████████████████████████

████████████████████              As discussed above, however, the FDA standard applied by Mr. Blumberg is without basis and the wrong legal standard to be applied to Pom's advertising in this case.

████████████████████████████████████████████

████████████████              See Allayee Decl., ¶ 8, Exh. G (Blumberg Report, pg. 34). ████████████████████████████████

████████████████████████████████████████████████████

████████████████  Id.  The intention of his opinion is clear – he wants to lead the

1  trier of fact to the conclusion that the advertising misleads the persons who views it.

2  This conclusion, however, has no basis in expertise, fact or scientific method.

3      In his own report, Mr. Blumberg

4

5

6  See Allayee Decl., ¶ 8, Exh. G (Blumberg Report, pg. 1).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{057086.1}

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG



See Allayee Decl., ¶

14, Exh. G (Blumberg Depo. pg. 114:17-115:19).

Yet, his opinions cut a wide swath devolving into a "paid for" statement regarding the misleading nature of Pom's advertising.  This analysis has nothing to do with his research or stated expertise and impinges on the issues to be embraced by the trier of fact.  See e.g. Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715-716 (8th Cir. 2001) (finding error when expert offered testimony outside of area of expertise regarding standard of care for

{057086.1}

warehouseman); see also Weisgam v. Marley Co., 169 F. 3d 514, 517-21 (8th Cir. 1999); Roberston v. Norton Co., 148 F. 3d 905, 907 (8th Cir. 1998).

The role of this Court as gatekeeper is clear.  Where a party proffers expert scientific testimony, the trial judge must determine, as a preliminary matter, whether the expert will provide testimony (1) regarding "scientific knowledge," and (2) whether the testimony will aid the trier of fact to understand or determine an issue of fact.  This preliminary determination requires an assessment of whether the theories and techniques underlying the expert's opinion are "scientifically valid" and whether those theories and techniques can be appropriately applied to the facts in issue. Daubert, 509 U.S. at 592-593.  Having no expertise in advertising, Mr. Blumberg's opinions on Pom's advertising fail to meet this standard.

Further, Mr. Blumberg has conducted no independent study of the alleged falsity of the advertising materials.  "Rule [of Evidence] 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S. at 591-92.  The court need not admit an expert opinion that is connected to the underlying data "only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (emphasis in original).  Further, the subject of an expert's testimony must be "scientific… knowledge.  The adjective 'scientific' implies a grounding in the methods and procedures of science.  Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." Daubert, 509 U.S. at 589-90. Further, "[p]roposed testimony must be supported by appropriate validation-*i.e.*, 'good grounds,' based on what is known." Id. at 590.

At a minimum, Mr. Blumberg was obligated to explore the actual effect of the advertising on the consumer and her behavior.  Yet, there is no substance or data to support his finding that the advertising was false and misleading.  See *IQ* Products Co. v. Pennzoil Products Co., 305 F.3d 368, 374-375 (2002) (affirming exclusion of an expert's opinion in Lanham Act case regarding effect of misleading or

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

ambiguous statements on consumers where expert failed to show actual deception
through "direct evidence of consumer reaction to the advertising or evidence of
consumer surveys or customer reaction tests.").

Mr. Blumberg's extensive "analysis" of Pom's advertising thus reveals no
scientifically valid theory or particular scientific technique that he applied to those
ads. Rather,

See
United States v. Jackson, 425 F.2d 574, 576 (D.C. Cir. 1970) ("To warrant the use
of expert testimony…two elements are required. First, the subject of the inference
must be so distinctively related to some science, profession, business or occupation
as to be beyond the ken of the average layman, and second, the witness must have
such skill, knowledge or experience in that field or calling as to make it appear that
his opinion or inference will probably aid the trier in his search for truth") (quoting
McCormick, Evidence, § 13 (1954)).

Nothing in Mr. Blumberg's report suggests that he is competent to conduct an
analysis of advertising, or that his method of doing so with respect to Pom's
advertisements was "scientific."   He therefore does not offer "experience or training
[that] enables a proffered expert witness to form an opinion which would aid the
jury[.]" Jackson, 425 F.2d at 576; see also Andrew v. Metro North Commuter R.
Co., 882 F.2d 705, 708 (2d Cir. 1989)("For an expert's testimony to be
admissible…it must be directed to matters within the witness' specific, technical, or
specialized knowledge and not to lay matters which a jury is capable of
understanding and deciding without the expert's help.").

Accordingly, Mr. Blumberg's opinions on what  Pom's advertising 'claims'
to its audience should be excluded.

PLAINTIFF'S MIL NO. 9 TO EXCLUDE OCEAN
SPRAY'S EXPERT WITNESS JEFFREY BLUMBERG

## VII. MR. BLUMBERG'S RELIANCE ON OPINIONS AND HEARSAY FROM GOVERNMENTAL OR QUASI-GOVERNMENTAL ENTITIES REGARDING POM'S ADVERTISING ARE WITHOUT FOUNDATION.

For the same reason that Mr. Blumberg is not qualified to render an opinion about Pom's advertising based on merely viewing those ads and going onto Pom's website, Mr. Blumberg is similarly not qualified to render an opinion based upon simply reading *another* opinion of that advertising by the NAD, ASA, or the FDA. Nothing about Mr. Blumberg's report suggests that he has expertise in dealing with these regulatory agencies or analyzing the conclusions that they reach in regulating advertising or the labeling and branding of food products.  Again, an expert witness "must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." Jackson, 425 F.2d at 576.

Given ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Blumberg's use of the opinions of the NAD or ASA, or the FDA warning letter, is no more useful to the trier of fact than his opinion of Pom's advertisements themselves.  Ocean Spray has simply used Mr. Blumberg, who as an expert witness is permitted to rely on hearsay in reaching his opinions, as an attempted means of getting included as evidence letters and opinions by these third party regulatory agencies that would otherwise be inadmissible.  All such evidence should be excluded.

## VIII. CONCLUSION

For the reasons set forth above, the Court should exclude Mr. Blumberg from testifying at trial.

Dated:  October 11, 2011          ROLL LAW GROUP, P.C.


By:   /s/Christopher Van Gundy
Christopher Van Gundy
Attorneys for Plaintiff
POM WONDERFUL LLC

{057086.1}